PARMENTIER, Administrator, Appellant, vs. McGINNIS and others, Respondents.

*May 23—June 17, 1914.*

*Prize fighting: Boxing exhibition: Action for death: Questions for jury: Setting aside verdict: Passion or prejudice.*

1. In an action for death of plaintiff's intestate, which occurred while he was taking part in a boxing contest, findings by the jury to the effect that such contest was not a fight of the character forbidden by sec. 4520, Stats., nor a fight by mutual consent which would make each participant liable to the other for actual damages, are *held* to be supported by the evidence.

2. The trial court was justified in this case in refusing to set aside,. on the ground that the jury were actuated by passion or prejudice, a special verdict which included a finding that the death of the plaintiff's intestate was not the proximate result of his. taking part in the boxing contest, and the answer "Not any" to the question as to what amount of money would compensate his parents for their pecuniary loss occasioned by his death.

BARNES, J., dissents.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This action was brought by the plaintiff as administrator to recover damages for the alleged death of his son, a boy about seventeen years and eight months old. The death occurred while the boy was engaged in a boxing exhibition in the city of Green Bay, Wisconsin, on December 26, 1910, the defendants being the other participant in the exhibition, *Lom;* the promoter, *McGinnis;* the referee who officiated, *Tonne;* and two spectators, *Allen* and *Abrams,* the latter of whom was at the time mayor of the city of Green Bay. Two other spectators were made defendants in the court below, but there is no appeal as to them.

The evidence shows that during the interval between the fifth and sixth rounds of the exhibition, while resting in his corner, the plaintiff's intestate collapsed into a state of unconsciousness and died.

The following special verdict was rendered:

"(1) Was the death of John Parmentier the proximate result of his taking part in the contest with the defendant *Lom?* A. No.

"(2) If your answer to the first question should be 'Yes,' then answer this: Was said contest a fight in which each sought to gain an advantage over the other by injuring him by means of blows? A. No.

"(3) If your answer to the second question should be 'Yes,' then answer this: Did the parties who arranged for said contest understand and intend when doing so that it was. to be such a fight? A. No.

"(4) If your answer to the first, second, and third questions shall be 'Yes,' then answer these:

"Did the defendant *Allen,* when he went to witness said contest, know or expect that it was to be such a fight? *A.* No.

"Did the defendant *Abrams,* when he went to witness said contest, know or expect that it was to be such a fight? *A.* No.

"Did the defendant Murphy, when he went to witness said contest, know or expect that it was to be such a fight? *A.* No.

"Did the defendant McGeehan, when he went to witness said contest, know or expect that it was to be such a fight? *A.* No.

"Did the defendant *Tonne,* when he acted as referee at said contest, know or understand that it was to be such a fight? *A.* No.

"(5) If your answer to the second question should be 'Yes' and your answer to the fourth question as to the defendant *Allen* should be 'No,' then answer this: Did the defendant *Allen* discover that it was such a fight during its progress, and thereafter and prior to Parmentier's collapse aid, abet, or encourage it? *A.* No.

"(6) If your answer to the second question should be 'Yes' and your answer to the fourth question as to the defendant *Abrams* should be 'No,' then answer this: Did the defendant *Abrams* discover that it was such a fight during its progress, and thereafter and prior to Parmentier's collapse aid, abet, or encourage it? *A.* No.

"(7) If your answer to the second question should be 'Yes' and your answer to the fourth question as to the defendant Murphy should be 'No,' then answer this: Did the defendant Murphy discover that it was such a fight during its progress, and thereafter and prior to Parmentier's collapse aid, abet, or encourage it? *A.* No.

"(8) If your answer to the second question should be 'Yes' and your answer to the fourth question as to the defendant McGeehan should be 'No,' then answer this: Did the defendant McGeehan discover that it was such a fight during its progress, and thereafter and prior to Parmentier's collapse aid, abet or encourage it? *A.* No.

"(9) If your answer to the second question should be 'Yes' and your answer to the fourth question as to the defendant *Tonne* should be 'No,' then answer this: Did the defendant

*Tonne* discover that it was such a fight during its progress, and thereafter and prior to Parmentier's collapse aid, abet, or encourage it? *A.* No.

"(10) At what amount do you assess the damages sustained by John Parmentier up to the time of his death, as the proximate result of his taking part in said contest? *A.* Not any.

"(11) What amount of money will compensate the parents of John Parmentier for their pecuniary loss occasioned by the death of their son? *A.* Not any."

The plaintiff's motion to set aside the answers in the special verdict and for a new trial was denied and judgment entered on the verdict dismissing the complaint with costs, from which judgment this appeal was taken.

For the appellant there was a brief by *Cady, Strehlow & Jaseph,* and oral argument by *F. C. Cady.*

For the respondents there was a brief signed by *Kittell & Burke,* attorneys for *McGinnis, Allen,* and *Lom;* by *T. P. Silverwood,* attorney for *Abrams,* and by *James H. McGillan,* attorney for *Tonne;* and the cause was argued orally by *Mr. J. A. Kittell* and *Mr. Silverwood.*

KERWIN, J.    The contention of appellant is that the exhibition in question was a fight within the provisions of sec. 4520, Stats., which provides in effect that any person who shall by previous arrangement or appointment engage in a fight with another person for the possession of any prize, belt, or other evidence of championship, or for any other cause, shall be punished, etc.; and if not a fight within the meaning of this statute, it was a fight by mutual consent, which would make each participant liable to the other for actual damages received in the absence of the statute.    But this question was squarely submitted to the jury and answered in the negative, the jury holding that the exhibition was not a fight.    The main question, therefore, on this appeal is whether the answer of the jury to the second question

is supported by the evidence.   We are satisfied from a careful examination of the record that there is an abundance of evidence to support this finding.   Exception is taken by appellant to some portions of the charge on this question, but we find no error in that regard.

Error is also assigned by counsel for appellant on refusal to give instructions asked, the formation of the verdict, and in admission and exclusion of evidence.   We find no error under these heads.

The exhibition in controversy seems clearly to come within the finding of the jury as a mere boxing exhibition or match and not a prize fight, and this was a question of fact for the jury.   *State v. Olympic Club,* 46 La. Ann. 935, 15 South. 190, 24 L. R. A. 452; *State v. Purtell,* 56 Kan. 479, 43 Pac. 782; *Seville v. State,* 49 Ohio St. 117, 30 N. E. 621, 15 L. R. A. 516; *People v. Taylor,* 96 Mich. 576, 56 N. W. 27.

Counsel for appellant, however, vigorously attack the verdict of the jury on the ground that the findings returned show that the jury were actuated by passion or prejudice.   This contention is based, chiefly, upon the findings to the first and eleventh questions of the special verdict.   Whether the death of the plaintiff's son was caused by exhaustion occasioned by the contest is not very material, since the finding of the jury to the second question, namely, that the exhibition was not a fight, is supported by the evidence.   The same is true as regards the answer to the eleventh question, because the answer to the second question relieves the defendants from liability, and it is quite obvious that the jury were influenced by the conclusion reached on the second question and the evidence regarding other questions of the special verdict, therefore were not actuated by passion or prejudice.   We think, taking the verdict as a whole, it cannot be said that the court below was wrong in finding that the jury were not actuated by passion or prejudice, therefore the appellant's contention under that head cannot be sustained.   The trial court, who

was in better position than this court to judge respecting the question of passion, prejudice, and fairness of the jury, overruled appellant's contention in that regard, and was of the opinion that the verdict of the jury was the result of honest judgment, and the court below was therefore justified in refusing to set it aside. *Lines v. Milwaukee,* 147 Wis. 546, 133 N. W. 592. The record shows that the case was carefully and fairly tried below and no prejudicial error committed. The judgment must therefore be affirmed.

*By the Court.*—The judgment is affirmed.

BARNES, J. I dissent. It seems to me that the deceased was killed in a fight and that no other conclusion is warranted by the credible evidence.