LONDON GUARANTEE & ACCIDENT COMPANY, LTD., Appellant, vs. GREAT NORTHERN RAILROAD COMPANY, Respondent.

*October 12—November 7, 1928.*

242

For the appellant there was a brief by *Hanitch, Hartley & Johnson,* attorneys, and *John C. Fritschler,* of counsel, all of Superior, and oral argument by *C. J. Hartley.*

For the respondent there was a brief by *Murphy, Hughes & Anderson* of Superior, and oral argument by *C. J. Hughes.*

DOERFLER, J. The railroad yards upon which were located the four tracks in question presented a busy place of employment. Cars were constantly passing over the tracks, were switched from one track to another, were loaded and unloaded, weighed, and while empty were shunted down the east track, and while being so dispatched were unattended by any one riding the car. This was the custom in vogue at and for some considerable time prior to the happening of the accident. The record discloses that the movements of the cars on the tracks and the loading of the cars and the other operations and movements in the yard were productive of noises which prevented the section men, working upon the tracks, from hearing the approach of shunted cars. The accident happened about 11 o'clock in the forenoon, and, while no cars had been shunted down the scale track a distance of 400 or 500 feet prior to the happening of the accident, the record nevertheless discloses that such movement of cars was liable to happen at any time. The deceased had been employed in these yards in the capacity of a section hand for a period of about three months before he sustained his injuries, and therefore had full knowledge of the actual situation that existed in the yards.

The degree of care required of both employer and employee at all times should be commensurate with the actual danger connected with the work to be performed. In 29 Cyc. 428 it is said: "The greater the risk or danger, the greater must be the care. What is ordinary care in a case of extraordinary danger would be extraordinary care in a case of ordinary danger." See *Hayden v. Carey,* 182 Wis. 530, 536, 196 N. W. 218. Under these circumstances it is not surprising that the jury found the deceased, Bussanick, guilty of contributory negligence. When he was struck by the empty tank car shunted down the east track, he was engaged in clearing a ditch between the rails. These cars were shunted exclusively from the south towards the north, so that it requires no argument to convince that the only danger that confronted the deceased arose from the north-bound cars. The record does not disclose that there was any necessity for Bussanick, in performing his work, to face towards the north instead of the south. Conceding, therefore, that the noisy condition of the railroad yards prevented him from hearing the approach of the oncoming shunted car, which was running at a rate of between three and four miles per hour, had he exercised ordinary care in the performance of his work he would have faced the south instead of the north, which would have permitted him a full view of the shunted car in question.

Counsel for the plaintiff complained bitterly that the case was not properly submitted; that it should be held that the action was one coming under the safe-place statute, and that error was committed in submitting the case to the jury on a special verdict involving merely questions concerning common-law negligence. Plaintiff's counsel were apparently satisfied to submit the case upon the theory of common-law negligence. No questions were proposed and submitted to the court involving the safe-place statute, nor were there any instructions upon that theory requested or even suggested. It was only after the verdict had been rendered and the jury

discharged that error was claimed by plaintiff's counsel for failure to submit questions covering the safe-place statute.

Assuming, however (but not deciding), that it could be held that the facts and circumstances in this case are such as to bring it within the purview of the safe-place statute, it must be remembered that the jury in the special verdict found the deceased guilty of contributory negligence. Contributory negligence, even under the safe-place statute, is a defense. The evidence on contributory negligence in the instant case is so strong that we are convinced that any fair-minded jury will answer that question in the same manner in which it was answered in the instant case.

Plaintiff's counsel assign as error the giving of the following instruction in connection with the question involving contributory negligence:

"You are further instructed that one engaged in the work which Bussanick was doing must be *constantly alert* and must look out for himself; that he must exercise ordinary care in looking and listening for approaching cars and be constantly mindful of the movement of cars about the switch yard in which he was employed, in the manner in which they were usually and customarily moved, to his knowledge, and if you are satisfied from a preponderance of the evidence that he failed to exercise ordinary care for his own safety in looking and listening for the movement of cars, where such movements could be seen or heard, or in placing himself in a position where he could observe such movements, then your answer to such question should be 'Yes.'"

It is argued that that portion of the instruction which required the deceased to be "constantly alert," etc., placed an unusual and unwarranted, heavy burden upon the deceased, and that such instruction constituted prejudicial error. It is true that in *Dinan v. C. & M. E. R. Co.* 164 Wis. 295, 159 N. W. 944, and in *Sparks v. Wis. Cent. R. Co.* 139 Wis. 108, 120 N. W. 858, and in a number of other cases, this court has in substance said that an employee obligated to perform specific duties cannot devote all of his

time towards exercising precaution, for if that were required his duties would remain unperformed. What is meant by "constantly alert," as contained in the instruction, is properly explained in the next portion of the instruction, in which it is said "that he must exercise ordinary care in looking and listening for approaching cars and be constantly mindful of the movement of cars about the switch yard in which he was employed. . . ." In other words, what the court merely intended, and in substance brought home to the jury, was the idea that what constitutes ordinary care on the part of an employee depends entirely upon the danger with which he is surrounded and with which he is liable to come in contact. Such care is the ordinary care. But, even granting that the expression contained in the instruction, "constantly alert," is error, nevertheless, under the circumstances in this case, it cannot be deemed as prejudicial error. The dangers in the switch yard were well known to the deceased. He knew that while no car on the scale track had approached him within a distance of 150 feet, that cars might be shunted down there at any time. Therefore, for his own protection, the ordinary care which he was required to exercise was that degree of care which the great mass of mankind, similarly employed, would exercise under the same or similar circumstances.

Plaintiff's counsel further assign as error the refusal of the court to give the following instruction:

"You are instructed that John Bussanick having died, so that he cannot be called to testify as a witness upon the trial, the law raises the presumption that he acted with ordinary care for his own safety at the time and place in question."

In 1 Jones, Commentaries on Evidence (2d ed.), sec. 257, it is said:

"Generally, in the absence of proof tending to show the contrary, where a person is killed by an accident to which there are no eye-witnesses, the presumption of the law is that he was in the exercise of due care. (See cases cited in

note 7.) . . . The true rule is that, in the absence of witnesses as to what deceased did or failed to do by way of precaution at and immediately before the time of injury, a presumption arises that, prompted by natural instinct, he exercised care for his own safety. This presumption is of fact, only, and is for the consideration of the jury; it rests upon the observed principle of conduct that men usually and ordinarily do exercise care for their own safety; and hence, if there is direct evidence as to how the deceased was conducting himself at the particular time and on the particular occasion, the presumption can have no weight and does not obtain." See, also, numerous cases under note 9; also, *Savage v. Rhode Island Co.* 28 R. I. 391, 67 Atl. 633; *Chicago, B. & Q. R. Co. v. Van Patten,* 74 Ill. 91; *Ryan v. Union Pac. R. Co.* 46 Utah, 530, 151 Pac. 71; 22 Corp. Jur. 94.

From the authorities above cited it clearly ·appears that under the great weight of authority in this country the refused instruction was not applicable to the ·instant case, because there was an eye-witness who testified directly as to how the accident happened.

The fifth question of the special verdict and the answer of the jury thereto are as follows:

"Question No. 5. What sum will fairly compensate plaintiff for the damages sustained by reason of the death of John Bussanick? Answer: None."

It is undisputed that the death of the deceased resulted in substantial damages, and that the plaintiff was subrogated to the rights of the widow and the estate of the deceased, under the provisions of the statute. The answer of the jury to this question, therefore, is contrary to the evidence. Error is therefore assigned upon the ground that the jury was actuated by bias and prejudice and that its verdict is perverse. In view of the answers of the jury to the questions of negligence and contributory negligence, the plaintiff could not recover damages, regardless of the amount actually sustained.

At the present time, where the ownership of an auto-

mobile has become the rule rather than the exception, negligence actions resulting from automobile accidents have alarmingly increased, and such actions are generally submitted to a jury on questions involving negligence and contributory negligence. It must also be conceded that jurors, in the course of time, have largely become educated on the subject of the legal effect of their answers upon the final outcome of the case. It would have been better practice on the part of the trial judge had he insisted on the jury answering the question as to damages. The court, however, presided at the trial, saw the witnesses and observed the program of the trial, and was better able to judge than this court as to whether or not there was an atmosphere of prejudice present during the trial. The result of the lower court's ruling would indicate that there was not.

This precise question has been before this court on numerous occasions, as will appear from the following cases, cited in respondent's brief: *Miner v. Rolling,* 167 Wis. 213, 167 N. W. 242; *Parmentier v. McGinnis,* 157 Wis. 596, 147 N. W. 1007; *Koenig v. Sproesser,* 161 Wis. 8, 152 N. W. 473.

In the case of *Olsen v. Brown,* 186 Wis. 179, 202 N. W. 167, the plaintiff sustained conceded damages in excess of $3,000, and the jury returned a verdict for $471.75. In that case the judgment of the lower court was reversed and a new trial ordered, because it appeared that the perverseness of the jury as manifested by its answer on the subject of damages extended also to the question involving plaintiff's negligence.

The lower court exercised its discretion in the matter, in this case, and we cannot say that it did so improperly.

From what has heretofore been said, it will be unnecessary to consider the other assignments of error contained in appellant's brief.

*By the Court.*—Judgment affirmed.