GOELZ, Administrator, Respondent, vs. KNOBLAUCH, Appellant.

*December 11, 1942—January 12, 1943.*

188

190

For the appellant there was a brief by *Walter C. Knoblauch* of Milwaukee, and *Otto Bosshard* of La Crosse, and oral argument by *Mr. Bosshard.*

*Walter Schinz, Jr.,* and *Herbert R. Manger,* both of Milwaukee, for the respondent.

MARTIN, J. The trial court, as indicated in its decision on the motions after verdict, was of the view that because the jury answered the second, third, fourth, and fifth questions of the special verdict, which were so framed as not to be answered unless the first question was answered in the affirmative, and because the jury answered the several subdivisions relating to damages "Nothing," that such answers indicated a perverse verdict and that such perversity may have affected the jury's answers to all the questions. In this connection the trial court in his decision said:

"All of this creates considerable doubt in my mind whether or not the apparent perversity of the.jury's answers does not affect the entire verdict. In support of this doubt it should be remembered much emphasis was placed by defendant's counsel in the examination of witnesses and also in the argument upon the presence of bedsores on the patient and the possibility that they were due to the kind of care and attention given the patient in the hospital. The possible purpose of thus beclouding the issues and confusing the jury came out in the open when during the argument counsel suggested that the bedsores were possibly the result of improper care on the part of the attending physician and the nurses of the hospital. This argument was promptly stopped but in the light of the emphasis that was placed on this phase during the trial, it is at least within reason that the jury were in fact confused. Under these circumstances I believe justice will be best promoted by a new trial."

However, the trial court in its decision, referring to Mrs. Goelz's hospitalization, said:

"During all of this hospitalization, according to the testimony, Mrs. Goelz suffered much pain and was given opiates and sedatives for relief. Some of the testimony attributes the death primarily to the complications brought on by the bedsores and secondarily to the cancer. Other evidence charged the cancer as the primary cause of the death and the bedsores as the secondary or a contributing cause."

We note that much of the testimony relating to bedsores was elicited by plaintiff's counsel and also by the court. In fact,

plaintiff's counsel argued that the bedsores proximately resulted from the fracture. There was medical testimony that bedsores could be relieved or arrested by proper treatment. Some of the medical testimony attributed Mrs. Goelz's death to the bedsores and the toxic poisoning resulting from them. The bedsores developed several weeks after Mrs. Goelz had been removed to the hospital. The reference made by defendant's counsel in his argument to the bedsores was legitimate and proper. We cannot perceive any reason why the jury should be confused by any reference to the bedsores which developed after Mrs. Goelz was hospitalized.

The key question of the special verdict was the first question, "Was the left femur of the deceased, Mrs. Mary Goelz, fractured at the time of her treatment by the defendant Walter G. Knoblauch on December 16, 1936?" The jury unanimously answered this question in the negative. Had the jury answered the first question in the affirmative, the other questions with reference to defendant's alleged negligence were to be answered. The jury's answers to the second, third, fourth, and fifth questions drop entirely from the case and may be disregarded. See *McGeehan v. Gaar, Scott & Co.* 122 Wis. 630, 634, 100 N. W. 1072; *Bodden v. John H. Detter Coffee Co.* 218 Wis. 451, 455, 261 N. W. 209; *Parmentier v. McGinnis,* 157 Wis. 596, 600, 147 N. W. 1007.

The trial court declined to change the jury's answer to the first question of the verdict but instead granted a new trial, stating in its order therefor that "the court deems that the verdict of the jury rendered herein is perverse and that justice will best be promoted by a new trial."

Since the answers to the second, third, fourth, and fifth questions of the verdict should be disregarded, we must consider the jury's failure to make any assessment of damages to the several subdivisions of question No. 6. The court instructed the jury to answer the sixth question as to damages, regardless of how they may have answered the other questions of the special verdict. This same question was before the

court in *Parmentier v. McGinnis, supra.* That was an action brought by the father as administrator to recover damages for the alleged death of his son, a boy about seventeen years of age, which death occurred while the boy was engaged in a boxing exhibition. In answer to the two questions of the special verdict with reference to damages, the jury answered, "Not any." In that case the court instructed the jury to answer the questions as to damages regardless of how they answered the other questions of the verdict. The evidence in that case showed that during the interval between the fifth and sixth rounds of the exhibition, while resting in his corner, the plaintiff's intestate collapsed into a state of unconsciousness and died. The first question of the special verdict read, "Was the death of John Parmentier the proximate result of his taking part in the contest with the defendant Lom?" The jury answered in the negative. The second question read, "If your answer to the first question should be 'Yes' then answer this: Was said contest a fight in which each sought to gain an advantage over the other by injuring him by means of blows?" The jury answered this question in the negative. The tenth question read, "At what amount do you assess the damages sustained by John Parmentier up to the time of his death, as the proximate result of his taking part in said contest?" The jury answered, "Not any." The eleventh question read, "What amount of money will compensate the parents of John Parmentier for their pecuniary loss occasioned by the death of their son?" The jury answered, "Not any." At page 600 the court said:

"Counsel for appellant, however, vigorously attack the verdict of the jury on the ground that the findings returned show that the jury were actuated by passion or prejudice. This contention is based, chiefly, upon the findings to the first and eleventh questions of the special verdict. Whether the death of the plaintiff's son was caused by exhaustion occasioned by the contest is not very material, since the finding of the jury to the second question, namely, that the exhibition was not a

fight, is supported by the evidence. The same is true as regards the answer to the eleventh question [damages], because the answer to the second question relieves the defendants from liability, and it is quite obvious that the jury were influenced by the conclusion reached on the second question and the evidence regarding other questions of the special verdict, therefore were not actuated by passion or prejudice."

It was conceded that the parents sustained pecuniary loss occasioned by the death of their son; but because the jury by their answer to a former question relieved the defendants from liability, the failure to assess damages was disregarded. In that case, as in the instant case, the jury having exonerated defendant from liability, their failure to assess any damages may be disregarded; or, as said in *McGeehan v. Gaar, Scott & Co., supra,* the questions and answers, other than the first question and answer thereto, drop entirely from the case.

Sec. 270.49 (2), Stats., so far as here material, provides:

"No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein."

The order granting a new trial in the interests of justice in the case at bar assigns as reason therefor the jury's having answered questions 2, 3, 4, and 5 of the special verdict although they had answered question No. 1 in the negative; also, the jury's failure to answer the several subdivisions of question No. 6 as to damages; and the further reason, that the jury did not understand and were confused as to the material issues regarding the cause of decedent's death, and that such want of understanding and confusion was due to the emphasis placed by defendant's counsel during his examination of witnesses and in his argument to the jury on the presence of bedsores. We have said all that need be said with reference to these grounds for a new trial in the interests of justice.

Ordinarily, the granting of a motion for a new trial lies largely within the discretion of the trial court, which will not

be disturbed unless abused. The rule, however, does not apply where it is clear that the trial court proceeded upon an erroneous view of the law. *Lange v. Olson,* 185 Wis. 657, 202 N. W. 361; *Day v. Pauly,* 186 Wis. 189, 202 N. W. 363; *Crombie v. Powers,* 200 Wis. 299, 301, 227 N. W. 278; *Tracy v. Malmstadt,* 236 Wis. 642, 646, 296 N. W. 87; *Schmutzler v. Brandenberg,* 240 Wis. 6, 9, 1 N. W. (2d) 775. The order for a new trial in the interests of justice was obviously based upon an erroneous view of the law by the trial court and should be set aside.

The respondent contends that the court erred in the admission and rejection of evidence, also in its instructions and refusal to instruct. These assignments have been examined and considered and we find no error in these respects.

*By the Court.*—Order reversed. Cause remanded with directions to reinstate the verdict, and to enter judgment in favor of defendant, dismissing plaintiff's complaint.

BARLOW, J., took no part.