WAGNER and another, Respondents, vs. PEIFFER and another, Appellants. [Two cases.]

*October 8—November 6, 1951.*

568

For the appellants there was a brief by *Byrne, Bubolz & Spanagel* of Appleton, and *Runkel & Runkel* of Port Washington, and oral argument by *Edward J. Byrne* and *Paul Runkel.*

For the respondents there was a brief by *Schanen, Schanen & Pauly* and *Frank X. Didier,* all of Port Washington, and oral argument by *Mr. Erwin Pauly* and *Mr. Didier.*

FAIRCHILD, J.   There is no dispute as to where the collision between the two cars occurred.  Nor is there reason for questioning the sufficiency of the evidence warranting the finding by the jury that appellant was driving on the wrong side of the road as he moved northerly and negotiated

the bend or curve in Highway 84 just before meeting respondent, who was approaching this bend and driving on his proper side of the road. The findings of the jury are amply sustained by the evidence. The evidence establishes the fact that there was negligence on the part of the appellant as well as on the part of the respondent. The proportion of the total negligence contributing to the accident by each of the parties is fixed in the manner provided for by law.

Peiffer was driving north and approaching the rather abrupt turn to the west in said highway, as Wagner, coming from the north, was driving easterly and approaching this same turn. The black-top, where Peiffer was driving, begins at the second line from the west which appears on the map reproduced herewith and extends toward the east. There was no center line actually marking the center of the road at the time of the accident, although such a line is indicated on the map. Neither driver at first saw the other; but Wagner noticed by the direction of the beam from Peiffer's lights that Peiffer was moving .in closely to the lane in which Wagner was driving. This movement by Peiffer, as Wagner describes it, was revealed by the beam from Peiffer's head-lights. Wagner testified: ". . . as I was coming to the turn, I was about one hundred fifty feet away from it yet and I seen the beam of the lights coming from Waubeka, and they were shining to the north, and it seems as if they were way over the center line toward the pole on the north side; and as I went a little further, I blew the horn, and the car always came over into my lane; and when he was way in the corner he was way on my side; there was no place to turn to the right; he was way on my lane. Then I made a short turn to my left to get away from a head-on collision." The testimony continued: "*Q*. About how far did you travel after commencing to make the short turn to your left before the cars came together? *A*. About twenty, twenty-five feet. *Q*. And at what point on the highway did the two cars meet,

approximately, to the best of your ability? *A.* Well, I would say my right front side was across where it would be a center line about four or five feet, and my back end of the car was on my side of the road, on the south side yet. *Q.* On the south side of the center line do you mean? *A.* Yes. *Q.* And what portions of your car and the Peiffer car came together? *A.* It was my right front corner and his left front corner."

Appellants state in their brief: "It is further substantiated by the location of the point of impact which is established without dispute to be two feet west of the west edge of that portion of Highway 84 which runs north and south, and five feet south of the north edge of the black-top."

Because of the elevation of the surface and the growth existing in the triangular space between the portions of Highway 84 near the point where its direction is changed by the turn south on the map, photographs were taken. The appellants now raise the question as to whether the trial court committed prejudicial error in rejecting certain photographs which it is claimed by the appellants show an obstructed view of the intersection in question, and also in refusing to have appellant Peiffer and the traffic officer mark the location of cars and skid marks on the engineer's map of the scene.

The map was received in evidence. It was drawn to scale and shown to be a correct representation of the highway as to courses and directions. There were nine photographs of the premises offered in evidence. The court for reasons stated below excluded four of the photographs and admitted the other five. There was a view of the premises by the court and jury. The reasons for excluding four of the pictures and receiving the remaining five were stated by the learned trial judge as follows:

"The court is of the opinion that defendants' Exhibit L is not proper, due to the fact that a picture of a car is taken on the highway at a position other than the place or point of the accident.

"Exhibit E does not appear to be proper because it is taken at too close an angle to give a true picture of the two highways or the scene of the accident. Exhibit F appears to have been taken at a point too close to the edge of the road and does not give a true picture of the two highways or the place of the accident. The same is true of Exhibit D. Exhibits I, H, K, G, and J, appear to be proper, with the exception that it is the order of the court that instead of listing the name 'Harry Peiffer against Vernon Wagner and Milwaukee Automobile Insurance Company, a corporation,' that there be placed in lieu thereof on the identifying yellow slip attached to each photograph the numbers of the cases as shown by the clerk's records.

"Mr. Didier: May I make a statement? I would like to make a statement on the record, Your Honor. I, of course, object to the exhibits showing thereon white spots which, in my opinion, are optical illusions and do not clearly depict the facts; and they are placed there and were taken a year after the collision; and I would state that for that reason those spots are objectionable on the pictures.

"The Court: Due to the fact that the court expects to make a statement to the jury to the effect that the photographs are not to be considered as evidence of any fact concerning this accident, but are merely allowed into the evidence for the purpose of assisting the jury to understand better the evidence given concerning the place of the accident, the court is of the opinion that if comments are made by the attorneys respecting the photographs, and with this instruction, that the photographs received in evidence are properly received. You can comment any way you want to on those.

"Mr. Byrne: May we have the record show, also, Your Honor, that with respect to Exhibits D, E, F, and L, that they are not rejected because of the slips attached, on the grounds that we offered to remove them, but because of the photographs themselves.

"The Court: The record may so show. And it is understood they are not objectionable because of the yellow slips attached, but because of the apparent position of the camera and cameraman in taking the pictures."

A photograph may be a witness' pictorial expression of a physical situation or fact observed by the witness and be a

means of communicating it with more exactness to the triers of fact than he could by verbal description. Its use for this purpose is sanctioned by practice long followed, and under proper circumstances photographs may be used. However, when there is a question whether a picture might or might not be used advantageously and properly in placing the facts before the jury, the answer to the question "must vary with one case and another, and we think the decision in each case must be left largely to the judgment and discretion of the presiding judge, without any restricting general formula." *State, for the Use of Chima, v. United R. & E. Co.* 162 Md. 404, 418, 159 Atl. 916, 83 A. L. R. 1315. *Hupfer v. National Distilling Co.* 119 Wis. 417, 96 N. W. 809.

It becomes a matter of judicial discretion, and only abuse of discretion can require a reversal based on a ruling of the court. As pointed out in *State, for the Use of Chima, v. United R. & E. Co., supra,* the question of admissibility was one for the court. In *Hupfer v. National Distilling Co., supra* (p. 427), our court ruled that the conclusion of the trial court upon the evidence submitted must be given great weight upon appeal, "substantially the same weight as is given that court's findings upon other issues tried without a jury." That case recites further that "all of the advantages of observation of witnesses, understanding of the application of testimony to known facts, and the like, are the same in one case as the other, and only where the appellate court can say that the identification is established by a very clear preponderance of the evidence should it overrule the conclusion of the trial court thereon." It is considered that there was no prejudicial error committed in excluding the particular photographs included in the ruling of the trial court.

In 4 Jones, Evidence (2d ed.), p. 3219, sec. 1752, that author says: "The cases agree as to the rule that, where a photograph or other similar mode of representation is used as evidence, there should be preliminary proof of accuracy of

reproduction. Sufficiency of such preliminary proof is a question for the trial court." The recognition of the use of photographs is controlled by the doctrine as stated in the cases cited in Judge JONES' work that whether a photograph is proper or not in any particular situation on the trial of a case is a matter within the sound discretion of the trial judge, to be disturbed on appeal only if there is lack of reasonable ground for such ruling.

As to the second assignment of error, to wit, the court's refusal to permit appellant Peiffer to mark the location of cars and skid marks on the engineer's map of the scene, and the court's refusal to require the traffic officer to do so (see map reproduced herewith). It certainly was not error to keep out of the record marks which were unnecessary, even though proposed to be made upon a map which had been admitted in evidence. The indication on the map of the point of collision by a witness who described the location might have been harmless, but it would serve no essential purpose. Such marks were not necessary to convey to the jury an understanding of the situation.

The court permitted the appellant, while a witness on the stand, to indicate his position on the highway and where his car was when he first saw the Wagner car, and to indicate the place of the collision. The record discloses ample evidence of such. Officer Dahm, when a witness, testified that he could not accurately and according to scale place such a mark. He testified as to the point of impact being five feet from the north line of an east and west line of Highway 84, where at the corner of the intersection with other highways the north line of Highway 84 runs practically east and west. The point of collision, the witness said, "was five feet from the north shoulder." When asked: "And did you locate that skid mark with respect to its position east and west?" he answered, "Yes, sir. I sighted—when I seen where the point of collision was—I sighted down there to the end of the road,

SECTION OF S.T. HWY. 84.
LOCATED IN SECS. 21 & 28
TOWN OF FREDONIA OZAUKEE CO.,WIS.
SCALE: 1 INCH = 25 FEET

and then it was two feet west of the west shoulder of 84 looking toward Waubeka." The surveyor's map was then introduced and received in evidence. On cross-examination,

Officer Dahm again testified as to the "point of impact," "Well, it is two feet west of the west shoulder of 84. That would be two feet west of this here road (indicating). Down here she drops down, so—your Highway 84 toward Waubeka drops down as she goes toward Waubeka; so you probably just get a line on the upper portion here (indicating), and you draw that line straight over, and then go two feet west, and five foot from the edge of the pavement in. That would be the point of collision. . . . Well, it is two foot west of the north edge of Highway 84 extended. *Q.* Let's see; Highway 84 runs north and south at this point? *A.* That's right. *Q.* And the line to which I am now pointing, it has been testified by the surveyor that that line represents the west edge of the black-top. In determining the east-west point of the point of impact, was it with respect to the west edge of the black-top that you determined the position? *A.* It was to the edge of the black-top. *Q.* As it runs north and south, is that right? *A.* That is correct."

There was never any question as to where the cars met or as to the fact that one turned to the left and the other driver turned to his right at so nearly an identical a time as to cause the collision at the spot described by the officer and by each of the parties to the action. The witness testified that if a line were extended north along the west side of the highway where its course turns west, a corner would result from which the place of collision could be fixed. The witnesses might have guessed as to the proper scale, but the court did not regard this as necessary. There had been a view of the premises by the court and jury, and the verbal description was sufficient. The officer doubted his ability to place a mark indicating the spot according to the scale. Wagner claimed Peiffer was on the wrong side of the road, and that when he discovered this, he (Wagner) turned to his left to dodge the oncoming car and avoid hitting Peiffer. Peiffer claims that he (Peiffer) turned to his right, believing

he could thus avoid colliding with Wagner, who, he claims, was on his (Peiffer's) side of the road.

As appears from the statement of facts, the jury in their special verdict found Peiffer negligent with respect to lookout, management and control, and in driving on the wrong side of the highway, and that the result of such negligence was a cause of the collision and of the resulting injuries to Wagner. The responsibility which was visited upon Wagner has already been described, and the percentage of negligence was fixed by the jury.

From the foregoing it appears that the primal issue of fact is: Which one of the drivers was violating the rule of the road by negligently driving in the wrong traffic lane? That issue was fully and fairly tried, resulting in a finding by the jury that Peiffer was driving on the wrong side of the road as he approached the place where Highway 84 turns from its northerly course to a northwesterly course. The court correctly ruled in excluding certain photographs already mentioned. There was no prejudicial error in holding that it was unnecessary for the witnesses to mark on the map the point that was established beyond dispute. All this gives us a record showing that the effect of the latter ruling could not have balanced the testimony either way as to which driver was negligently occupying the wrong traffic lane, and no error was committed. It appears that the photographs which were not admitted in evidence lacked some prime essentials to qualify them as material and relevant evidence, and that the photographs admitted in evidence sufficiently met the requirements under the circumstances of this case, especially when accompanied by a view of the premises by the court and jury.

The record on this appeal shows appellant's rights were safeguarded by the observance of forms and by recognition of and a fair application of legal principles. When every fact

upon which an issue may be raised is established without depriving the losing party of any right, sufficient reason then exists to hold that the jury's determination of the case rules throughout. For then no occasion arises for disturbing a judgment in conformity with the proper application of the rules of law. Here the jury viewed the premises. The evidence showing the course and conduct of the parties resulting in the collision warranted the conclusion of the jury. Their findings in the special verdict are sustained by the evidence.

The appellants further urge that because of the jury's assessment of limited damages resulting to appellant, the verdict was perverse and a new trial is required. In considering this question, we must have in mind the distinction between an inadequate assessment and a determination which is the result of passion and prejudice. Mere inadequacy in the fixing of an award as an element of damage does not necessarily indicate a perverse verdict. If it is only a mistake, and the one who has suffered the damage is entitled to recover, provision exists in our law for a proper adjustment under the rule regulating increasing and reducing damages.

However, a study of the cases leads to the conclusion that the inadequacy of damages awarded, in order to be held perverse, should be of such a nature and be sufficient to justify the court in saying that the verdict was perverse; and this must be in the exercise of sound discretion. Our court said in *Lines v. Milwaukee*, 147 Wis. 546, 547, 133 N. W. 592, "Indeed, where the answer to one question in a special verdict indicates that the jury were actuated by passion and prejudice in returning such answer, it is the duty of the court to set the verdict aside, unless satisfied that the passion and prejudice affected only that particular question." It is true that many things may occur to satisfy a trial court that the jurors have been improperly influenced, but it is also true that the trial judge may observe many things which would indicate that no improper motives prompted the verdict re-

turned, and in such a case his ruling that there was no perversity affecting the judgment of the jury should not be disturbed. *Bent v. Jonet,* 213 Wis. 635, 252 N. W. 290. The verdict does not fall within the rules which permit classifying it as a perverse verdict. In *London G. & A. Co. v. Great Northern R. Co.* 197 Wis. 241, 248, 221 N. W. 762, it was said:

"It is undisputed that the death of the deceased resulted in substantial damages. . . . The answer of the jury to this question, therefore, is contrary to the evidence. Error is therefore assigned upon the ground that the jury was actuated by bias and prejudice and that its verdict is perverse. In view of the answers of the jury to the questions of negligence and contributory negligence, the plaintiff could not recover damages, regardless of the amount actually sustained.

". . . It would have been better practice on the part of the trial judge had he insisted on the jury answering the question as to damages. The court, however, presided at the trial, saw the witnesses and observed the program of the trial, and was better able to judge than this court as to whether or not there was an atmosphere of prejudice present during the trial. The result of the lower court's ruling would indicate that there was not."

This precise question has been before this court on numerous occasions, as will appear from the following cases, cited in respondents' brief: *Miner v. Rolling,* 167 Wis. 213, 167 N. W. 242; *Parmentier v. McGinnis,* 157 Wis. 596, 147 N. W. 1007; *Koenig v. Sproesser,* 161 Wis. 8, 152 N. W. 473.

In the case of *Schuster v. Bridgeman,* 225 Wis. 547, 551, 275 N. W. 440, the court said:

"The assessment of inadequate damages was urged below as a reason for granting plaintiff's motion for a new trial, and the refusal of the trial court to consider the verdict as perverse is assigned as error. The facts present in any case must determine into which classification the case falls, that

is, whether the verdict is perverse or fair, and the trial judge's opinion of the fairness of. the jury must necessarily be of consequence. . . . An inadvertent answer or the failure to fix the amount of damages may be so immaterial as to have no weight whatever in the consideration of a claim of perverseness. Accompanying circumstances and the findings of the jury on controlling questions may show the verdict to be the result of honest judgment, and, when the court below does so decide and is justified in reaching such a conclusion, his decision must be affirmed."

In the case of *Goelz v. Knoblauch,* 242 Wis. 186, 7 N. W. (2d) 420, the court referred to the *Parmentier v. McGinnis Case, supra,* where there was no passion or prejudice present, and in recognition of the rule, made the following analysis of that case (p. 193) :

"The eleventh question read, 'What amount of money will compensate the parents of John Parmentier for their pecuniary loss occasioned by the death of their son?' The jury answered, 'Not any.' . . .

"It was conceded that the parents sustained pecuniary loss occasioned by the death of their son; but because the jury by their answer to a former question relieved the defendants from liability, the failure to assess damages was disregarded. In that case, as in the instant case, the jury having exonerated defendant from liability, their failure to assess any damages may be disregarded; or, as said in *McGeehan v. Gaar, Scott & Co., supra,* the questions and answers, other than the first question and answer thereto, drop entirely from the case."

It is considered that the trial court's denial of a new trial was proper.

*By the Court.*—Judgments affirmed.

GEHL, J. (*dissenting*). A combination of three circumstances requires a new trial if for no other reason than in the interest of justice. Each of them standing alone might warrant the action of the majority; but the combination

makes it appear probable that justice has miscarried, and that, therefore, we should order a new trial.

Three photographs, Exhibits D, E, and F were rejected. They were offered by Peiffer and his insurance carrier for the purpose of demonstrating to the jury that the story told by Wagner as to his observation of the position of Peiffer's car on the north and south highway as it was approaching the curve was incredible. They tend to throw some doubt upon his story and indicate that it was not likely, because of the presence of shrubbery and the elevation of the terrain at the curve, that Peiffer could have observed the position of the Wagner car as he testified that he did. It is no answer to say that the jury had viewed the premises and that its members would or could have made the observation or have seen the conditions represented by the photographs. They might have made the observation had their attention been called to the possibility or probability that Wagner would testify as he did. We do not assume that that was done, for it would have been error to permit it. The trial court cited as its reason for rejecting the exhibits the fact that they were taken at a point too close to the edge of the road and were not a true picture of the two highways or the scene of the accident. The record does not disclose that that is true. In fact, the objection to their receipt was not made upon that ground.

The court refused to permit two witnesses to place marks upon a map which had been received in evidence to indicate the location of the automobiles and skid marks. Placing marks upon maps is a common practice and is helpful to both the jury and the reviewing court. I do not find that its propriety has ever been questioned. In many of the opinions of this court reference is made to marks placed upon maps, and in at least one of them, we have considered them of controlling weight as compared with estimates made in oral testimony. *Foster v. Bauer,* 173 Wis. 231, 180 N. W.

817. I believe that I may safely say that none of the members of this court has ever heard objection made at the trial to an offer that a witness designate an object or the location of one upon a map.

The third circumstance, probably the most important, is that which exists in the jury's award of damages to Peiffer. His damages to his automobile and for towing were stipulated at $1,021; for medical and hospital expenses at $3,944.75. It was undisputed that at the time of trial he had sustained a wage loss of $3,778.50. There was, therefore a showing upon stipulation and undisputed testimony of $8,744.25 in so-called special damages at the time of trial. It was also undisputed that he would be totally disabled for a minimum additional period of six months, possibly a year, and, based upon the amount of his earnings at the time of the accident, and considering a period of continuing disability for only six months, there was undisputed proof of an additional wage loss of $1,786.20. Thus, there was undisputed proof of a total of $10,530.45, and the jury's total award for damages, including assessments for pain, suffering, and disability, was $9,965.75. Their award for loss of earnings, $3,500, was more than $2,000 less than the undisputed proof shows he lost in that respect.

For pain and suffering endured over a period of a year, during two months of which there was excruciating pain, the jury awarded Peiffer $750. For permanent disability involving a permanently stiff right hip in a man thirty-seven years of age, a minimum permanent loss of function in his right knee of thirty per cent, a doubtful recovery from "double vision" of his left eye, and an over-all condition which will render him unable to perform the only kind of work for which he has been trained, the jury awarded him only $750.

There was a sharp conflict in the testimony as to the alleged negligence of the two drivers. The significant cir-

cumstance that the cars came together at a substantial distance to the right of Peiffer's lane of travel is not so clearly offset by the testimony of the opposition as to permit the court to say that Peiffer was guilty of negligence as a matter of law. Under such circumstances we may not say that the obvious perverseness of the jury manifested by its assessment of damages sustained by Peiffer did not extend to the determination of the questions involving negligence. *Olsen v. Brown,* 186 Wis. 179, 202 N. W. 167. Here is demonstrated the important effect of the court's refusal to receive in evidence the photographs which would have tended to impeach Wagner's story that he saw or was able to see the position of the Peiffer car as it approached the curve. Had Peiffer been permitted to show by the photographs that Wagner's story was incredible, is it not reasonable to assume that the jury might not have disregarded the judge's instructions on the question of damages? *Murphy v. Lachmund Lumber & Coal Co.* 194 Wis. 119, 215 N. W. 822.

The award of damages to Peiffer is so grossly disproportionate to his injuries and disability that we might well conclude, that upon that ground alone, the jury must have been influenced by a perverted judgment which extended to its determination of the other questions of the verdict and order a new trial. However wrong I might be in that conclusion, it still appears to me that the combination of circumstances referred to discloses conclusively that justice has miscarried in this case and that a new trial should be granted under the provisions of sec. 251.09, Stats.

I am authorized to state that Mr. Justice BROADFOOT and Mr. Justice CURRIE join in this dissent.