Odya, Plaintiff and Respondent, vs. Quade, Defendant and Appellant: Milwaukee Automobile Insurance Company, Interpleaded Defendant and Respondent.

*April 7—May 6, 1958.*

64

66

For the appellant there were briefs by *Lowry & Hunter* and *Schober & Radtke,* and oral argument by *Willis J. Zick* and *Jack A. Radtke,* all of Waukesha.

For the respondent there was a brief by *Rosenbaum & Rosenbaum* of Milwaukee, and oral argument by *Ralph K. Rosenbaum, Jr.*

For the interpleaded respondent there was a brief and oral argument by *Richard S. Hippenmeyer* of Waukesha.

FAIRCHILD, J.   Appellant asserts that none of the reasons given by the court is sufficient for a new trial.  The inter-

pleaded defendant contends that the cross complaint against it should have been dismissed because there is no evidence of causal negligence on the part of Odya. It and the plaintiff contend that in any event there were errors upon the trial which warranted a new trial.

Our analysis of the record leads us to the following conclusions:

(1) The evidence considered in the light of the presumptions applicable to drivers deceased or suffering from retrograde amnesia established that the collision occurred on Odya's side of the center line. There was a presumption that Odya operated plaintiff's car on his own side of the road. There was no evidence tending to show that the Odya car was ever on the wrong side of the road and thus the presumption in his favor remained in force on that issue. There was also a presumption that Quade was on his own side of the road at and just prior to the time of collision during the interval which he could not remember. The position of the cars after the collision was evidence from which the inference that Quade negligently invaded Odya's side of the road could be drawn. *Mackowski v. Milwaukee Automobile Mut. Ins. Co.* (1957), 275 Wis. 545, 551, 82 N. W. (2d) 906. Accordingly, the presumption in favor of Quade on this issue dropped out of the case. *Atkinson v. Huber* (1955), 268 Wis. 615, 618, 68 N. W. (2d) 447.

(2) There was a jury question whether Quade was negligent with respect to lookout. Quade testified that when he first saw the Odya car, it was about four or five car lengths away from him. This would show that he did not see the Odya car at his earliest opportunity unless the failure to see was adequately explained. The fact that there was a curve and Quade's testimony that there were "a couple big trees there and a row of mailboxes" did not establish even *prima facie* that Quade could not have seen the Odya car when the

cars were more than four or five car lengths apart and left the issue of lookout unresolved.

(3) There was no substantial jury issue as to Quade's negligence with respect to management and control independent of the question whether he was negligent in being on the wrong side of the road. In view of the short intervening distance when Quade first saw Odya, the only question in the field of management and control was whether he negligently went to the wrong side of the road or negligently remained on the wrong side (if the jury disbelieved his testimony that he was on the right side to begin with).

(4) Quade was negligent with respect to speed as a matter of law. There was a jury question whether such negligence was a cause of the collision. Excessive speed on the part of a driver approaching a right-hand curve may be found to have caused him to swing over the center line and into the left lane as he rounded the curve. *Mackowski v. Milwaukee Automobile Mut. Ins. Co., supra,* page 552.

(5) There was a jury question as to Odya's negligence with respect to headlights. Quade's testimony as to Odya's lights was a sufficient basis for a jury finding that Odya failed to dim, depress, or tilt the headlamps so as to distribute the light therefrom so that the glaring rays were not directed into Quade's eyes. (Sec. 85.06 (16), Stats. 1953.) Appellant has cited several cases from other jurisdictions holding that similar testimony is enough to create a jury issue as to dimming of lights. *Keseleff v. Sunset Highway Motor Freight Co.* (1936), 187 Wash. 642, 651, 60 Pac. (2d) 720, 724 (testimony that the lights of the oncoming car were " 'bad and branching out in every direction.' "); *Guinou v. Webster* (1933), 132 Cal. App. 29, 31, 22 Pac. (2d) 231, 232 (testimony that plaintiff was blinded by defendant's lights); *Stammerjohan v. Sims* (1948), 72 S. D. 189, 192, 31 N. W. (2d) 449, 450 (testimony that " 'it seemed to me

like his lights were very bright. . . . it seemed that his car turned towards me and his lights shone directly into my windshield and blinded me. . . .' "); *Bell v. Lewis* (1946), 74 Ga. App. 26, 30, 38 S. E. (2d) 686, 689 (testimony that " 'The truck had bright lights and never dimmed them. . . . They blinded me where I couldn't see.' ").

Because of Quade's testimony as to Odya's lights the presumption that Odya exercised due care in that respect dropped out of the case.

(6) There was a jury question whether Quade was negligent in being upon Odya's side of the road just prior to the time of collision. If the jury found that Quade's excessive speed was not a cause of his swinging onto the left side of the road and if the jury found, as Quade testified, that Quade was on his right side until he first saw the Odya lights, the jury might then have found that Quade was not negligent with respect to invading Odya's side of the road if it found that Odya's glaring lights so completely blinded Quade that it was utterly impossible for him to see where he was going and entirely beyond his power to know that he was veering to the left side of the road. "While the law requires the driver of an automobile to keep to the right when meeting another vehicle, one cannot be held guilty of negligence in unconsciously failing to do so where that is impossible by reason of circumstances over which he has no control and for which he is in no sense responsible." *Johnson v. Prideaux* (1922), 176 Wis. 375, 378, 187 N. W. 207.

In the light of the foregoing conclusions we now consider the specific questions raised by the parties:

(1) The court stated in its opinion, later incorporated in its order, that it was granting a new trial because the verdict is "inconsistent, prejudicial, and perverse" and pointed to the jury's negative answer to the first question and its finding of no damages by reason of permanent injury to plaintiff. The jury, in effect, found that Odya failed to dim, depress, or

tilt his headlamps. The jury made two inconsistent findings, that Odya's failure to dim his headlamps caused the collision and (in effect) that Quade stayed on his own side of the road. The jury did not reach the question of whether Quade was negligent in being on Odya's side of the road. Even if there were no other issues which should have been submitted to the jury, the order for a new trial would have to be affirmed because of the inconsistency. As indicated in this opinion, the court should have answered question 1 or else instructed the jury that it had been established that Quade was on Odya's side of the road at and just prior to the time of collision and not have submitted question 1.

In its order granting a new trial the court stated that the "Verdict is perverse and reflects bias and prejudice of the jury." It has been held that a jury's violation of instructions by not answering damage questions in a verdict where they have answered other questions so as to determine that there is no liability does not compel a trial court to treat the verdict as perverse. *Parmentier v. McGinnis* (1914), 157 Wis. 596, 147 N. W. 1007; *London G. & A. Co. v. Great Northern R. Co.* (1928), 197 Wis. 241, 248, 221 N. W. 762; *Frings v. Donovan* (1954), 266 Wis. 277, 282, 63 N. W. (2d) 105. An order granting a new trial on the ground of perversity has been reversed where based on a failure to answer damage questions. *Goelz v. Knoblauch* (1943), 242 Wis. 186, 7 N. W. (2d) 420. Because of the opportunity the trial court has to observe the trial and to sense any atmosphere of prejudice, we have some doubt about the soundness of the *Goelz* decision. Because, however, there must be a new trial in this case upon several other grounds, it is not necessary to consider the matter of perversity in this case.

(2) As has already been pointed out there was evidence to support a finding that Odya failed to dim or depress his headlamps and a finding that such failure was a cause of the collision. Hence the trial court correctly refused to dismiss

defendant's cross complaint against the interpleaded defendant.

(3) Respondents objected to the testimony of Mrs. Lois Banda. She testified that she was a nurses aide at Waukesha Memorial Hospital at the time of the accident. She had worked there during the summer of 1952 and had worked continuously since June of 1953. She was eighteen years old. When Odya and the other injured people were brought in, she was assigned to stand next to the cart on which Odya was placed to guard against his rolling off. She was with him for one half or three quarters of an hour and talked with him. She testified, "There seemed to be a heavy odor of alcohol to his breath . . . his speech appeared to me to be slurred, and he kept repeating the same things over and over again."

She was permitted to testify over objection that she was of the opinion that Odya was under the influence of alcohol. She also testified that she had seen between eight and twelve patients in shock and was familiar with the symptoms; that so far as she could tell none of his conduct was based upon any state of shock he may have been in at that time although she also testified that he went into a state of shock between twenty minutes and one-half hour after he was brought in.

"Numerous cases may be found which hold, in substance, that no particular scientific knowledge is required to recognize whether a person is in a drunken or intoxicated condition, and that a lay witness, who has the opportunity to observe the facts upon which he bases his opinion, may give his opinion whether a person at a particular time was or was not intoxicated." *Kuroske v. Aetna Life Ins. Co.* (1940), 234 Wis. 394, 404, 291 N. W. 384. Accordingly, Mrs. Banda was competent to state her opinion that Odya was under the influence of liquor. Her brief experience as nurses aide, however, did not in our opinion qualify her to state an opinion that Odya's conduct which she observed was not caused by shock.

Testimony that Odya was under the influence of alcohol was not evidence from which it could be inferred that he drove on the wrong side of the road and accordingly, was not material on that issue. There being other evidence, however, that he failed to dim his headlights, the testimony that he was under the influence of alcohol could properly be considered along with the other evidence upon that issue. *Frey v. Dick* (1956), 273 Wis. 1, 76 N. W. (2d) 716.

(4) The court should have submitted questions inquiring whether Quade was negligent with respect to lookout, whether such negligence, if found, was causal and whether his negligence with respect to speed was causal. Failure to submit these questions was also a sufficient basis for a new trial.

(5) Objection was made to the form of the question with respect to Odya's lights. The form of the question was not error, the court having instructed the jury as to the terms of the applicable statute. It appears to us, however, that it would have been better to have framed the question by using the substance, at least, of the language of the statute.

(6) Our attention was called to an instruction that "the defendant has testified that he was on his side of the road prior to the collision and there will be a presumption that that continued until it was proved to the contrary." This instruction should not have been given. The evidence permitted only one finding with respect to the place of occurrence of the collision. Quade's testimony that he was on his own side of the road prior to the interval which he does not remember, does not rebut the presumption that Odya remained on his own side of the road.

*By the Court.*—Orders affirmed.

HALLOWS, J., took no part.