DICKMAN, by Guardian *ad litem,* and another, Plaintiffs, v.
SCHAEFFER and another, Defendants and Respondents:
WOOD and another, Defendants and Appellants.

*May 5—June 7, 1960.*

For the appellants there were briefs by *Lehman & Seymour* of Elkhorn, and oral argument by *Robert F. Lehman.*

For the respondents there was a brief and oral argument by *Crosby H. Summers* of Janesville.

HALLOWS, J.  The questions raised by Wood are whether there is any credible evidence to support the verdict finding Schaeffer's negligent lookout was not causal and whether the verdict of the jury evinces a perverseness requiring a new trial.  On the first question both parties agree that if there is any credible evidence to sustain the verdict of the jury, this court should not set the verdict aside.  *Evjen v. Packer City Transit Line* (1960), 9 Wis. (2d) 153, 100 N. W. (2d) 580; *Smith v. Benjamin* (1952), 261 Wis. 548, 53 N. W. (2d) 619; *Ray v. Milwaukee Automobile Ins. Co.* (1939), 230 Wis. 323, 283 N. W. 799.  There is no dispute between the parties that on review this court must accept the credible evidence most favorable to sustain the verdict.  *Ruid v. Davis* (1959), 8 Wis. (2d) 288, 99 N. W. (2d) 129. No question is raised that the evidence does not support the finding of the jury that Wood was causally negligent in respect to lookout and in making a left turn.  Wood contends the verdict finding Schaeffer's negligent lookout was not causal is based on speculation and conjecture and not on any credible evidence.  A jury cannot base its finding on conjecture or speculation.  *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83; *Hyer v. Janesville* (1898), 101 Wis. 371, 77 N. W. 729; *Larson v. Splett* (1954), 267 Wis. 473, 66 N. W. (2d) 181.

The accident occurred about 8:20 p. m., November 23, 1958, on Clausen road in the town of Spring Prairie, Walworth county, Wisconsin.  Clausen road is black-topped, runs north and south, and is 15 feet wide with no marked center line.  In the area of the collision the road slopes up to the north.  Wood, a city mail carrier and part-time insurance agent, lived on the west side of Clausen road. His gravel driveway joins Clausen road about 154 feet south of a crest of a hill measured to the center of the

driveway. The driveway flares out to a width of 27 feet at its intersection with the road. At the time of the accident it was dark and the headlights of both cars were on. Wood was alone in his car proceeding north on Clausen road toward his home. At a point about one eighth of a mile south of his driveway he turned on his left directional turn signal. As he approached the point of his turn into the driveway he looked ahead to the top of the hill, but did not see Schaeffer's car. There is testimony that he started his turn either 10, 15, or 30 feet south of the intersection of the driveway with Clausen road and was going either 10 or 15 miles per hour when he made the turn.

Schaeffer was driving south on Clausen road with Ronald Dickman as a passenger and was traveling 40 to 45 miles per hour. Schaeffer testified that he did not see the Wood car until he was over the crest of the hill and some four or five car lengths (66 or 82½ feet) from Wood, and at that time the Wood car was making a left turn into the driveway and was sideways in the road with its headlights shining northwest. Schaeffer saw only the side of Wood's car and not the headlights. He put on his brakes, but not heavily, and turned to the left to go around the Wood car to avoid the collision. However, the front of Schaeffer's car struck the Wood car in the middle, pushing it into the bank on the west side of Clausen road. The Wood car came to rest headed east after making a 180-degree turn, with its front end on the edge of the road about three feet south of the driveway. Wood was thrown from the car some 20 feet to the south. The Schaeffer car stopped in a field, headed southwest with its rear end 27 feet from the edge of the road and 122 feet south from the front of Wood's car.

Wood claims the negligent lookout of Schaeffer was causal because if he had looked when he should have at the crest of the hill, he would have seen what his passenger,

Dickman, saw, *i.e.,* Wood making a left turn—and therefore had time to avoid the accident. This contention is based on Dickman's testimony on adverse examination when he was the plaintiff in this action. He did not testify at the trial. The difficulty with this version of the evidence is that it is not the most favorable to sustain the verdict. The defendants, Wood and his insurer, contend Dickman's testimony cannot be disregarded because it stands uncontradicted, citing *Johnson v. Aetna Life Ins. Co.* (1914), 158 Wis. 56, 147 N. W. 32, and *Thiel v. Damrau* (1954), 268 Wis. 76, 66 N. W. (2d) 747, and any other version of the accident is based on speculation and conjecture.

However, from Wood's testimony of his speed and the place where he started to make his turn, and the speed of Schaeffer's car, the jury could reasonably infer that had Schaeffer looked at the crest of the hill he would have seen Wood on his own side of the road, with no indication of a left turn except his signal light. At that time Schaeffer had a right to assume Wood was going to make a legal left turn in accordance with the law of the road, and not cut in ahead of him. *Dinger v. McCoy Transportation Co.* (1949), 254 Wis. 447, 37 N. W. (2d) 26; *Hansen v. Storandt* (1939), 231 Wis. 63, 285 N. W. 370; *Schultz v. Miller* (1951), 259 Wis. 316, 48 N. W. (2d) 477.

The jury could reasonably infer when Wood started his left turn without seeing Schaeffer and at a time when such turn could not be made with reasonable safety, findings which are not contested on this appeal, Schaeffer at the legal speed he was going could not have avoided the collision even if he had looked before he did. The jury had a right to pass on the credibility of Dickman's testimony and disregard it when found to be contradictory to permissible inferences which could be drawn from Wood's testimony. We do not deem it necessary to mathematically demonstrate the correctness of the jury's finding, as the trial court did

in its written opinion. When several inferences may reasonably be drawn from credible evidence, one of which will support a claim of one of the parties and the other inferences will not, it is for the jury to determine the proper inference to be drawn from the conflicting evidence. Although we could sustain a contrary result if found by the jury, it is our duty not to set aside a verdict when it is approved by the trial court, as here, and when there is credible evidence to sustain it. *Maccaux v. Princl* (1958), 3 Wis. (2d) 44, 87 N. W. (2d) 772; *Kanzenbach v. S. C. Johnson & Son, Inc.* (1956), 273 Wis. 621, 79 N. W. (2d) 249. There is sufficient credible evidence to support the verdict that Schaeffer was not causally negligent as to lookout or negligent as to management and control.

In their second argument the defendants, Wood and his insurer, contend that the verdict was inconsistent and therefore perverse and the perverseness affected the entire verdict, requiring a new trial. Inconsistency in the verdict does not necessarily exist because the jury awarded $500 for loss of wages and nothing for pain and suffering, even considering the court inserted $220.90 in the verdict as the amount of medical expense. In most cases where there are medical bills and loss of services, pain and suffering exist; but we cannot say as a matter of law that is necessarily true in every case and therefore a verdict is inconsistent if it does not award some damages for pain and suffering when it allows medical expense and loss of wages. There is no question here of permanent injury.

Was the verdict perverse or the result of passion or prejudice? The evidence of pain and suffering as given by Wood was entirely subjective. The jury was not bound to accept such testimony. Wood saw his doctor once for treatment and several times for checkups, was in the hospital for about an hour, and carried his arm in a sling for a week. There is evidence from which the jury could reasonably

infer Wood might suffer pain in his arm only if he continued to work as a mail man, which he did not do. The jury awarded him full damages for loss of services, although he was on a paid sick leave and worked part time as an insurance agent. What pain, if any, Wood suffered, the jury could consider was not sufficient to be compensated with money.

We find no evidence of perverseness, much less any passion or prejudice, which pervaded the entire verdict. If the jury were prejudiced it would not have allowed the amount it did for loss of services. Because the jury found Schaeffer negligent as to lookout, but found such lookout not causal, is not necessarily evidence of perverseness. While questions of this kind must be decided on their own facts, this court has held that when a jury has absolved a defendant of causal negligence, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse. *Parmentier v. McGinnis* (1914), 157 Wis. 596, 147 N. W. 1007; *Wagner v. Peiffer* (1951), 259 Wis. 566, 49 N. W. (2d) 739. See *Schulze v. Kleeber,* ante, p. 540, 103 N. W. (2d) 560. This result has been explained in some cases on the ground the jury was influenced by its answer on the negligence questions and, although the jury should have found damages, the damage question could be disregarded as immaterial and dropped out of the case in view of the jury's finding of no negligence.

The defendants, Wood and his insurer, argue this rule applies when it can be said there was no negligence as a matter of law, but this court has applied the rule when a jury's findings are sustained by credible evidence. The facts in this case are even stronger because the jury did recognize Wood's damages for loss of earnings and discriminated between the damage questions, and also was uninfluenced by its answers to the negligence questions. The cases cited

by Wood as examples of perverse verdicts do not govern the facts of this case. See *Feldstein v. Harrington* (1959), 8 Wis. (2d) 569, 99 N. W. (2d) 694 (defendant liability admitted); *Lines v. Milwaukee* (1911), 147 Wis. 546, 133 N. W. 592 (inadequate damages on the evidence, trial court affirmed); *State Journal Printing Co. v. Madison* (1912), 148 Wis. 396, 134 N. W. 909 (complete disregard of undisputed credible evidence of damage and of the court's instructions on the fact of damage); *Prahl v. Hogensen* (1924), 185 Wis. 37, 200 N. W. 660 (nonliability not sustained by evidence and amount of damage contrary to undisputed evidence). The trial court was in a better position than this court to judge the question of prejudice and fairness of the jury. In its written opinion the court carefully considered this question and stated its reason for denying the motion for a new trial. On reviewing the record, we cannot say the trial court was in error in ruling the verdict was not perverse.

## Schaeffer's Review.

Because Schaeffer was a minor, the trial court appointed the attorney for his insurer as his guardian *ad litem*. Schaeffer and his insurer asked for a proposed disbursement of $300 for guardian *ad litem* fees in their bill of costs. This amount was based on two days' trial at $150 per day, the per diem for circuit court trial work set by the fee schedule of the State Bar of Wisconsin. The trial court denied the fee for the reason the guardian *ad litem's* duties were incidental to the duties he owed under his retainer to the insurer to defend Schaeffer. Sec. 256.48, Stats., provides guardians *ad litem* must be attorneys and shall be allowed reasonable compensation for their services. Reasonable compensation is then defined to be: "Such as is customarily charged by attorneys in this state for comparable services." By sec.

271.04 (2), guardian *ad litem* fees are taxable disbursements.

The guardian *ad litem* did not perform services comparable to those of a trial lawyer during this trial. He was the trial lawyer of the insurer which was a party defendant and which also undertook to defend Schaeffer under its policy. Sec. 256.48, Stats., contemplates a guardian *ad litem* who actually performs legal services in that capacity. Otherwise, there is no purpose in defining a reasonable fee based on legal services. Before the creation of this section of the statutes some sections provided for appointment of guardians *ad litem* but no requirement existed that they be attorneys and, in some, no provision was made for the payment of fees. The intent of sec. 256.48 was to assure attorneys who were appointed guardians *ad litem* that they would be paid the customary legal fees for legal services. It was not the intention of the legislature to allow double recovery. There is no proof in the record that the attorney for the insurer performed any services as guardian *ad litem* over and above those he performed as attorney for the insurer, in defending Schaeffer. He tried the case, not as guardian *ad litem,* but as attorney for the insurer. He performed no services as guardian *ad litem* entitling him to tax $150 per trial day. This is not to say, if a claim against an insured were in excess of the policy limits so that a conflict of interests existed, that a guardian *ad litem* for the minor insured, who necessarily could not be the attorney for the insurer, would not be entitled to reasonable compensation for his services as taxable costs if his client were successful. In *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163, we held an unsuccessful minor could not recover guardian *ad litem* fees. There is nothing in that case which controls this situation.

The defendants, Schaeffer and his insurer, also claim they were entitled to statutory costs on the dismissal of

Wood's complaint for contribution and, in addition, statutory costs on the dismissal of the claim for damages for personal injuries. Costs of $100, taxed against Wood and his insurer on Schaeffer's judgment covering both causes, were affirmed by the trial court. Schaeffer and his insurer argue that, if Wood and his insurer had commenced separate actions instead of cross-complaining, they would have been entitled to tax costs of $100 in each action. Assuming that to be true, here there was only one cross complaint between the parties. The causes of action pleaded arose out of the same occurrence and it is discretionary with the trial court in such a case whether it shall allow costs under sec. 271.035 (2), Stats. We believe the trial court did not abuse its discretion.

The defendants, Wood and his insurer, in their reply brief direct the court's attention to the incorrect legends on Schaeffer's Exhibits 5 and 9. These pictures were taken for the purpose of showing sight lines from certain points south of the driveway to a parked vehicle just north of the crest of the hill. The positions of the camera were 15 feet and 45 feet south of the center line of the driveway. The legends were reversed on the pictures. The incorrectness of the legends as to the distance the pictures were taken from the driveway is not sufficient to materially affect the line of sight from the two positions and the jury could not have been prejudiced or misled by the error.

*By the Court.*—Judgment affirmed.