Mary H. STAEHLER, Plaintiff-Appellant,

BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN,
Plaintiff,

v.

Jennifer L. BEUTHIN and Economy Preferred
Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 95–3295. Submitted on briefs October 15, 1996.—Decided
November 27, 1996.*

(Also reported in 557 N.W.2d 487.)

611

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Charles W. Averbeck* of *Averbeck & Hammer, S.C.* of Fond du Lac.

On behalf of the defendants-respondents, the cause was submitted on the brief of *David G. Dudas* of *McCanna, Konz, Dudas & Associates, S.C.* of Appleton.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

ANDERSON, P.J.   Mary H. Staehler appeals from a jury verdict finding her fifty percent causally negligent, awarding medical expenses of $2989.67 and awarding no damages for past or future pain and suffering.   On appeal, Staehler argues that the apportionment of negligence and the denial of damages for pain and suffering are not supported by the evidence; the medical expense award is perverse and the jury failed to follow instructions; and, the taxation of costs was in error because the defendants' offer of judgment was invalid. Because the jury is the arbiter of credibility and the evidence supports the verdict apportioning causal negligence, reducing medical expenses and denying pain and suffering, we affirm. We further conclude that when a defendant offers a settlement to the principal plaintiff with the condition that the plaintiff also indemnify any existing related subrogated claim, the plaintiff can properly evaluate the offer and it is therefore valid. Accordingly, we affirm the judgment.

Staehler was involved in an automobile accident with the defendant, Jennifer L. Beuthin.[1] Staehler was traveling in a southerly direction on Pioneer Road approaching the intersection at Military Road in Fond du Lac, Wisconsin. Beuthin was driving in the opposite direction on Pioneer Road. At the intersection, Beuthin collided with Staehler's automobile while making a left turn onto Military Road. As a result of the accident, Staehler suffered various injuries, the most serious of which was an alleged back injury, as well as a concussion, multiple abrasions and contusions.

Staehler filed a personal injury action against Beuthin for damages she allegedly sustained in the

[1] Beuthin has since married. To maintain uniformity, we will continue to refer to her maiden name.

accident. The case was tried to a jury and the jury returned a verdict apportioning fifty percent causal negligence to Staehler, awarding $2989.67 in medical expenses and awarding nothing for pain and suffering. The trial court entered judgment on the verdict. Staehler filed motions after verdict requesting a new trial on the issue of damages based on the "perverse" jury verdict or, in the alternative, an additur on the items of damages. The trial court denied Staehler's motions and found that Staehler was "entitled to recover the sum of $1494.83 on the Verdict" and pursuant to § 807.01(1), STATS.,[2] the defendants were "entitled to recover statutory costs in the amount of $3457.98." Judgment was entered on October 24, 1995, in favor of Beuthin and her insurer, Economy Preferred Insurance Company (collectively, Beuthin) in the amount of $1963.15, plus statutory interest at a rate of twelve percent per annum.[3]

Staehler appeals. Additional facts will be included within the body of the decision as necessary.

---

[2] The order for judgment incorrectly refers to § 807.01(2), STATS. Upon remand, the order shall be amended to reflect the appropriate subsection, § 807.01(1), STATS.

[3] The jury verdict was entered on July 28, 1995. Staehler's motions after verdict were denied and judgment was first entered by the trial court on August 31, 1995. Thereafter, Beuthin submitted a bill of costs to which Staehler objected. Both parties then filed contravening motions relating to the taxation of costs. The trial court denied Staehler's motion, granted Beuthin's motion for costs and entered a second judgment on October 24, 1995. The parties stipulated to vacate the original judgment dated August 31, 1995, leaving the October 24, 1995, judgment in full force and effect.

■

On appeal, Staehler contends that there is insufficient evidence to support the jury's verdict. Our standard of review of a jury's verdict is severely circumscribed. We must affirm the jury's verdict "if there is any credible evidence to support [it]." *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984), *overruled on other grounds by DeChant v. Monarch Life Ins. Co*, 200 Wis. 2d 559, 576-77, 547 N.W.2d 592, 598-99 (1996). When the verdict has the trial court's approval, this is even more true. *Id.* Our task is not to search the record for evidence contrary to the jury's verdict; rather, we must search the record for credible evidence in support of the verdict, accepting any reasonable inferences favorable to the verdict that the jury could have drawn from that evidence. *Id.* at 305-06, 347 N.W.2d at 598.

### Causal Negligence

Staehler first argues that there is no evidence in this record to support a finding that she was operating her car negligently at or just before the time of the accident. Staehler maintains that the jury's allocation of negligence, fifty percent to Staehler and fifty percent to Beuthin, renders the verdict perverse. We disagree.

■

The comparison and apportionment of causal negligence are peculiarly within the province of the jury. *White v. Leeder*, 149 Wis. 2d 948, 959, 440 N.W.2d 557, 561 (1989). We will uphold the jury's finding if there is any credible evidence to support it. *Frayer v. Lovell*, 190 Wis. 2d 794, 810, 529 N.W.2d 236, 243 (Ct. App. 1995). Matters of weight and credibility are left to the jury, and where more than one reasonable inference

can be drawn from the evidence, we must accept the inference drawn by the jury. *Id.*

Staehler asserts that the verdict is not sustainable because the evidence establishes that at the time of the accident she was in her proper lane traveling at approximately ten to fifteen miles per hour. Staehler persists that Beuthin failed to yield the right of way and made a left-hand turn in front of her, causing a nearly head-on collision. Based on this evidence, Staehler argues that the jury's finding of causal negligence cannot be sustained. We are unpersuaded.

This case involves comparing Staehler's negligence in failing to maintain a proper lookout with Beuthin's negligence in making a left-hand turn. Staehler testified that at the time of the accident, 4:30 p.m, the weather was dark, dreary, cloudy and rainy. Staehler further testified that she could not recall whether her headlights were on, how fast she was going, whether she slowed down as she approached the intersection, where she was looking as she approached the intersection, whether she was distracted, or whether she applied her brakes, swerved or took any evasive action. Beuthin testified that a few cars turned in front of her, she double checked that no traffic was coming, started to make her left-hand turn, moved forward one foot, and that is when the collision occurred. Beuthin also testified that her headlights and left turn signal were on, but she failed to see Staehler's car.

In addition, expert testimony was presented which indicated that the angle of impact was approximately forty degrees. The reconstruction expert also theorized that if the vehicles came to a stop approximately at impact, then each vehicle was moving in the range of ten to fifteen miles per hour. This opinion was based on the officer's diagram of the vehicles and Beuthin's testi-

mony that her vehicle skidded sideways about two feet. However, the investigating police officer testified that the drawing on the accident report was very basic and very rough.

Therefore, we conclude that there is credible evidence from which the jury could have determined that both Staehler and Beuthin failed to use ordinary care to avoid the accident, and both were equally at fault for the accident. Because we must view the evidence in the light most favorable to the verdict, we decline to second-guess the jury's apportionment of negligence. *See Brain v. Mann*, 129 Wis. 2d 447, 454-55, 385 N.W.2d 227, 231 (Ct. App. 1986). Accordingly, we affirm this portion of the jury verdict.

## Medical Expenses

Next, Staehler contends that the jury improperly reduced her medical award. She theorizes that after subtracting the chiropractic bills, the jury divided the remaining medical expenses in half to conform with its finding that she was fifty percent causally negligent in violation of the jury instructions. The trial court instructed the jury that "[i]n answering the damage question, you will disregard completely any percentages which you may have inserted in your answers to the subdivisions of the comparative negligence question." *See* WIS. J I—CIVIL 1700. The trial court also informed the jury that they were "the sole judges of the credibility of the witnesses and the weight to be given to their testimony"; "the burden rests on each person claiming damages to convince you by the greater weight of the credible evidence to a reasonable certainty that such person has sustained the damages"; and in each instance, the amount must "fairly and

619

justly compensate the person named in the question for the damages sustained as a natural consequence of the action, or the accident." *See* WIS J I—CIVIL 215; WIS J I—CIVIL 1705.

Staehler maintains that "[t]he jury's clear failure to follow the instruction of the court renders the verdict perverse and requires that a new trial be granted on the issue of damages in the interest of justice . . . ." A verdict is perverse when the jury clearly refuses to follow the direction or instructions of the trial court upon a point of law. *Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 820, 416 N.W.2d 906, 913 (Ct. App. 1987). Staehler points out that the total medical expenses of $7634.76 less the chiropractic bills of $1655.42 equals $5979.34 in remaining medical expenses. Under Staehler's theory, the jury simply reduced the remaining medical bills by fifty percent for her contributory negligence ($5979.34 x 50% = $2989.67).

However, under the perverse verdict test, Staehler's challenge clearly fails. Staehler points to nothing in the record to support her argument that the jury refused to follow the direction or instructions of the trial court. As noted by the trial court in motions after verdict, the case boiled down to the question of Staehler's credibility which was challenged throughout the trial. On Staehler's cross-examination, the jury learned that she was not truthful with her physicians in revealing her health history and activity level; she admitted to swearing falsely in her deposition and written interrogatories; and she was evasive in her recollection of the accident, the nature of her injuries, and the related treatment. And despite her protestations of constant pain and discomfort, Staehler could

not explain why she only sought sporadic medical treatment.

██

The jurors were informed that they were the sole judges of credibility of the witnesses and the weight to be given to their testimony. *See* WIS J I—CIVIL 215. We must assume the jury followed the instructions. *Nowatske v. Osterloh*, 198 Wis. 2d 419, 448, 543 N.W.2d 265, 276 (1996). Where more than one reasonable inference can be drawn from the evidence, this court must accept the inference drawn by the jury. *See Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 782, 541 N.W.2d 203, 207 (Ct. App. 1995). The jury presumably disbelieved Staehler's complaints of low back pain and adjusted the medical bills accordingly. The evidence supports this inference, and we therefore affirm this portion of the jury verdict.

## Pain and Suffering

Staehler further argues that because the jury found liability for her physical injuries, the jury's failure to award anything for pain and suffering "leads inescapably to the conclusion that justice has miscarried in this case." Staehler maintains that based on the evidence and under "the rule" of *Schulze v. Kleeber*, 10 Wis. 2d 540, 103 N.W.2d 560 (1960),[4] the jury's verdict cannot be allowed to stand. We are unpersuaded.

---

[4] We take issue with the fact that Staehler quoted *Schulze* out of context in her brief-in-chief. The *Schulze* court concluded that the verdict was not perverse. In fact, the court stated, "It has been held that a jury's violation of instructions by not answering damage questions in a verdict where they have answered other questions so as to determine that there is no liability does not compel a trial court to treat the verdict as perverse." *Schulze v. Kleeber*, 10 Wis. 2d 540, 544-45, 103

It is well established that an appellate court will not overturn a jury's verdict if there is any credible evidence to support it. *D.L. v. Huebner*, 110 Wis. 2d 581, 634, 329 N.W.2d 890, 914 (1983). When the jury has answered liability questions unfavorably to the plaintiff, which findings are supported by credible evidence, the granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse. *See Smith v. St. Paul Fire & Marine Ins. Co.*, 56 Wis. 2d 752, 759, 203 N.W.2d 34, 38 (1973). "In most cases where there are medical bills and loss of services, pain and suffering exist; but we cannot say as a matter of law that [this] is necessarily true in every case . . . ." *Dickman v. Schaeffer*, 10 Wis. 2d 610, 616, 103 N.W.2d 922, 926 (1960); *Jahnke v. Smith*, 56 Wis. 2d 642, 653, 203 N.W.2d 67, 73 (1973).

An assessment of the evidence supports the jury's disregard for Staehler's claim for pain and suffering. While Staehler presented evidence supporting these damage claims, the evidence was largely subjective and the true issue was the credibility of her claim as to the extent of her injuries *from this accident*. There was an abundance of evidence and competing inferences presented on both sides of this claim which we will not elaborate on. However, our reading of the record reveals a significant jury question as to whether Staehler's claims legitimately related to this accident

N.W.2d 560, 563 (1960) (quoted source omitted); *see also Dickman v. Schaeffer*, 10 Wis. 2d 610, 616, 103 N.W.2d 922, 926 (1960). Obviously, *Schulze* does not provide the support that Staehler had wished.

or were the product of prior medical problems, fabrication or exaggeration.[5]

██

A verdict is not inconsistent because it allows damages for medical expenses but denies recovery for personal injuries or pain and suffering. *Jahnke*, 56 Wis. 2d at 653, 203 N.W.2d at 73. In *Jahnke*, the supreme court concluded that based on the evidence, the jury may have determined that the plaintiff's injuries were de minimis or nonexistent. *Id.* Here, the jury may well have concluded that Staehler's alleged pain and suffering were not related to her injuries from the accident but rather to other causes. Again, this issue boiled down to the jury's assessment of Staehler's credibility and the jury was not obligated to find Staehler's testimony credible regarding pain and suffering. What pain, if any, Staehler suffered, the jury could consider was not sufficient to be compensated with money. *See Dickman*, 10 Wis. 2d at 617, 103 N.W.2d at 926. We conclude that the jury verdict was not inconsistent or perverse and is supported by the evidence.

---

[5] Only by way of example, and without intending to be exhaustive, we note: Staehler made no complaint of lower back pain until two weeks following the accident; she had experienced problems with her low back prior to the accident, but failed to notify her treating physicians; she did tell her physicians (and the jury) that she was knocked unconscious and had no recollection of the accident until she came to in the emergency room, yet Dr. Meress, the emergency room physician, described her as "alert, oriented, and answering appropriately 9/10 questions;" and she continued to play softball in 1992 and 1993, and she continued after the accident, and to this day, to play volleyball in both winter and summer leagues.

## Validity of Offer of Judgment

Staehler's final argument is that Beuthin's offer of judgment did not meet the requirements of § 807.01(1), STATS., because it contained only one offer to Staehler and her subrogated insurer, Blue Cross & Blue Shield United of Wisconsin (Blue Cross). Beuthin offered $25,000 plus statutory costs with the condition that Staehler "indemnify or otherwise satisfy any existing related subrogated claims." Staehler contends that she was unable to evaluate what was being offered to her. We disagree.

The application of § 807.01(1), STATS., to the facts of this case presents a question of law which we decide without deference to the trial court's determination. *Ritt v. Dental Care Assocs., S.C.*, 199 Wis. 2d 48, 75, 543 N.W.2d 852, 862 (Ct. App. 1995). Section 807.01(1) provides:

> After issue is joined but at least 20 days before the trial, the defendant may serve upon the plaintiff a written offer to allow judgment to be taken against the defendant for the sum, or property, or to the effect therein specified, with costs. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of judgment is not accepted and the plaintiff fails to recover a more favorable judgment, the plaintiff shall not recover costs but defendant shall recover costs to be computed on the demand of the complaint.

The validity of an offer of settlement under § 807.01, STATS., depends on whether it allows the offeree to fully and fairly evaluate the offer from his or

her own perspective. *Testa v. Farmers Ins. Exch.*, 164 Wis. 2d 296, 302, 474 N.W.2d 776, 779 (Ct. App. 1991). It is the obligation of the party making the offer to do so in clear and unambiguous terms, with any ambiguity in the offer being construed against the drafter. *See Stan's Lumber, Inc. v. Fleming*, 196 Wis. 2d 554, 576, 538 N.W.2d 849, 858 (Ct. App. 1995).

The courts have addressed the validity of various offers of settlement. We have held that a joint offer of judgment by defendants, who were jointly and severally liable, to a single plaintiff was valid. *See Denil v. Integrity Mut. Ins. Co.*, 135 Wis. 2d 373, 380-82, 401 N.W.2d 13, 16-17 (Ct. App. 1986). Similarly, where multiple defendant tortfeasors, who were jointly and severally liable to a plaintiff, were covered by the same insurance policy and the offer was within the insurance policy's limits, a single offer of an aggregate sum was a valid offer. *See Testa*, 164 Wis. 2d at 303, 474 N.W.2d at 779.

We have also addressed this issue in the context of multiple defendant tortfeasors and a subrogated defendant, who provided payments for medical expenses. *See Ritt*, 199 Wis. 2d at 74, 543 N.W.2d at 862. In *Ritt*, we held that where an offer of settlement is made from a single plaintiff to multiple defendants and a subrogated insurer, the offer is invalid if it does not indicate the sum includes the subrogated claim. *See id.* at 78, 543 N.W.2d at 864. To avoid ambiguity, the offer must indicate whether the subrogated claim would be satisfied from the settlement proceeds. *See id.*

Here, the offer specifically provided that the settlement proceeds be used to "satisfy any existing related subrogated claims." It is undisputed that Blue Cross was joined as a plaintiff in the action based on its sub-

rogated interest in medical payments made on behalf of Staehler. The maximum amount of the subrogated interest was known to Staehler. Contrary to Staehler's contention, Beuthin's offer was valid because it did require Staehler to satisfy her own claim and that of Blue Cross out of the money offered. As reasoned by the trial court, Staehler "was well aware of the subrogee's expenses, and costs, and could very easily have determined during and within the statutory period of time whether or not that offer of judgment was adequate and they could make an intelligent and decisive determination on whether to accept that . . . ." We agree that Staehler could fully and fairly evaluate the offer. We therefore conclude that the offer invoked the provisions of § 807.01(1), STATS., entitling Beuthin to taxable costs.

Nevertheless, Staehler likens her situation to that of the defendants in *Wilber v. Fuchs*, 158 Wis. 2d 158, 461 N.W.2d 803 (Ct. App. 1990). In *Wilber*, all five individual defendants, each represented by different insurers and alleged to be negligent in different ways, were confronted with an offer of settlement which provided one aggregate settlement figure for all the claims relating to the incident. *Id.* at 163-64, 461 N.W.2d at 805. The court reasoned that "[a] defendant who spurns an offer of settlement should pay the sanctions of the statute when he or she errs in evaluating the claim against himself or herself—not others." *Id.* at 164, 461 N.W.2d at 805. Because the offer did not permit each defendant to individually evaluate the offer from the perspective of that defendant's assessment of his or her own liability, the offer was held to be invalid. *Id.*

Staehler maintains that like the *Wilber* defendants, she also is unable to discern how much she is

being offered because the offer "requires her to pay the claim of the other plaintiff in the case and to also pay the claim of any subrogated person who might not be in the case." This argument has no merit. We first note that Beuthin's offer provided that the settlement proceeds be used to satisfy *any existing related* subrogated claims, not the claim of *any* subrogated person who might not be in the case. It is undisputed that Blue Cross was the only existing and related subrogated party.

In addition, the cases are factually distinguishable. In *Wilber*, the multiple defendants were adverse—each was alleged to be negligent in a different way and punitive damages were alleged against some, but not all. *Id.* at 163-64, 461 N.W.2d at 805. Accordingly, the concern of the *Wilber* court was that a single aggregate offer of settlement to multiple adverse defendants would "unreasonably force" each defendant to evaluate not only the claim against himself or herself, but the other defendants as well. *Id.* at 164, 461 N.W.2d at 805.

This situation would not manifest itself in the case at bar. Here, Staehler and Blue Cross are not adverse to each other. Moreover, unlike the defendants in *Wilber*, the value of Beuthin's offer was clear. Beuthin offered $25,000 less Blue Cross' subrogated claim. In essence, Staehler could receive a minimum of $17,365.24, or she could receive more, depending on her negotiations with Blue Cross. As evidenced by Beuthin's answers and offer of judgment, Staehler was put on notice that her right to damages was in dispute. Staehler requested $35,000 for past pain and suffering and $110,000 for future pain and suffering. Thus, she was fully able to evaluate the probability of success on

her claims and whether she would receive a judgment surpassing that offered by Beuthin. For these reasons, we conclude that the offer invoked the provisions of § 807.01(1), STATS., entitling Beuthin to taxable costs.

*By the Court.*—Judgment affirmed and cause remanded with directions.