**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 3, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2230**

STATE OF WISCONSIN

Cir. Ct. No. **2017SC695**

IN COURT OF APPEALS
DISTRICT III

YIM C. HEAR,

PLAINTIFF-RESPONDENT,

V.

SUPERIOR RESTAURANT COMPANY, LLC,

DEFENDANT-APPELLANT.

APPEAL from judgments of the circuit court for Douglas County: KELLY J. THIMM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Superior Restaurant Company, LLC, appeals judgments, entered following a jury's verdict in a case involving a failed

restaurant venture. The jury awarded Yim Hear a net amount of $82,934.89 on his eviction claim after offsetting $97,500 for Superior's successful prosecution of a breach of fiduciary duty claim against Hear. Superior challenges many of the circuit court's determinations, including its refusal to change the jury's answers on the special verdict form to questions regarding Superior's breach of its lease agreement with Hear, and Hear's breach of a preliminary agreement made at the inception of the restaurant venture. Superior also alleges the court made numerous evidentiary errors and erred by refusing to award damages based on the jury's finding that Hear breached an implied covenant of good faith and fair dealing. We reject all of Superior's arguments and affirm.

## BACKGROUND

¶2      This case arose out of a failed restaurant venture. Hear owned real property that formerly housed one of his restaurants. In February 2016, Hear, Mark Casper, and Kyle Torvinen entered into a "Preliminary Agreement" under which they sought to open a new restaurant, Epic Restaurant and Lounge, in the same space.[1] The Preliminary Agreement contained provisions regarding the financial and management arrangements necessary to open Epic. In particular, it stated "[t]hat [Casper, Torvinen and Hear] will pay for the necessary expenditures to remodel, decorate, staff, and otherwise prepare the restaurant for opening, 'up front' or as incurred."

¶3      Hear, Casper, and Torvinen formed Superior as a limited liability company to operate the restaurant. Superior entered into a "triple net" lease with

---

[1] The partners contemplated that a more formal operating agreement would eventually be signed, but none ever was.

Hear to rent the real property on which Epic's operations would be housed. Under the lease, Superior was required to pay all property taxes, insurance and utility bills, in addition to rent at an initial rate of $3,000 per month. As a result, Hear was both a member of Superior and Superior's landlord.

¶4      Over time, each of Superior's members contributed $210,000 to the restaurant's renovation. Following the members' initial investments, when additional money was necessary, Casper would make a "capital call"—that is, a request for the members to add more money for the project. On June 29, 2016, Casper made a capital call for $10,000 each, which Hear paid. Hear testified at trial that approximately one month later, he notified Casper and Torvinen he would make no further contributions. In total, Casper and Torvinen contributed an additional $244,500 each after Hear stopped contributing.

¶5      Hear ultimately hired attorney Roy Christiansen, who on February 7, 2017, informed Casper and Torvinen by e-mail that Hear "will remain the restaurant's landlord, but he will not be a business partner in the restaurant any longer." Additional correspondence occurred concerning Hear's alleged withdrawal. Hear commenced this eviction action in July 2017, alleging Superior had repeatedly failed to pay rent when due. Superior counterclaimed against Hear, alleging a variety of claims that included breach of contract, breach of fiduciary duty, fraud and equitable offset.

¶6      Following pretrial motions, the eviction claim and the remaining counterclaims were tried to a jury, with the circuit court sitting as co-factfinder on Superior's equitable claims. The jury found that Hear had withdrawn from Superior as of February 7, 2017, which was the later of two dates Hear had proposed; Superior had argued at trial that Hear had never withdrawn. With

respect to Hear's eviction claim, the jury found that Superior had breached the lease and owed Hear damages totaling approximately $124,600 for unpaid rent, real property taxes, and utilities.[2] The jury rejected Superior's counterclaims for fraud in the inducement, unjust enrichment, abuse of process, and breach of the Preliminary Agreement. It concluded, however, that Hear had breached the implied covenant of good faith and fair dealing under the Preliminary Agreement, with damages to be determined by the court. The jury also determined Hear breached his fiduciary duty to Superior, damaging Superior in the amount of $97,500. The court then entered a judgment of eviction.

¶7      Superior filed a motion for a new trial, alleging the circuit court had made two evidentiary errors: (1) admitting a demand letter Torvinen had sent to an alleged tortfeasor's insurer while representing Hear in a personal injury lawsuit prior to the restaurant venture; and (2) refusing to publish to the jury additional correspondence between Christiansen and Torvinen following Christiansen's February 7, 2017 e-mail.

¶8      In a separate filing, Superior sought to change the jury's answer to the question regarding Superior's breach of the lease. Superior asserted that, as a matter of law, it was entitled to "offset" or "recoup" the capital contributions that Hear had failed to make against the rent Superior owed to Hear, at the time those obligations arose. As a result, Superior argued that because Hear was at all relevant times indebted to it for a greater amount than Superior owed for rent, Superior had not breached the lease, and the circuit court was required to vacate

---

[2] The jury additionally found that the property could have been rented for $6,000 per month, which formed the basis for Hear's request for additional damages based on Superior's status as a holdover tenant.

the judgment of eviction. Superior also asserted that the evidence was insufficient to support the jury's determination that Hear had withdrawn from the restaurant venture as of February 7, 2017. Superior further argued that the undisputed evidence showed Hear had breached the Preliminary Agreement, and it urged the court to also change the jury's answer on that issue.[3]

¶9 Meanwhile, the parties briefed the issue of damages for Hear's breach of the implied covenant of good faith and fair dealing. Following a hearing, the circuit court declined to award any damages on that claim. The court determined the appropriate measure of damages for such a breach would be the capital contributions Hear was expected, but failed, to make until the date of his withdrawal—$97,500. The court noted that was precisely the amount the jury had awarded on Superior's breach of fiduciary duty claim, and it determined that Superior had failed to demonstrate any separate damages arising from the breach of the implied covenant of good faith and fair dealing.

¶10 The circuit court addressed the various postverdict motions at a separate hearing. The court reaffirmed its earlier determinations regarding the admissibility of evidence and further concluded that none of the alleged evidentiary errors affected Superior's substantial rights. The court also declined to change any of the jury's answers to the questions on the special verdict form. In particular, it noted the jury's verdict was unclear on what acts or omissions the jury regarded as a material breach of the lease, as well as what acts or omissions constituted a breach of Hear's fiduciary duties to Superior. Based upon uncertainty generated by the special verdict form, the court concluded it would be

---

[3] Superior made additional arguments not relevant to this appeal.

improper to apply the doctrines of offset or recoupment to conclude that no breach of the lease had occurred.

¶11    After the trial, the circuit court did offset the amounts stated in the jury's verdict for each party, resulting in a net $27,096.91 damages award in Hear's favor.  The court concluded Hear was entitled to an additional $48,000 in damages as a result of Superior's holdover tenancy, and, after adding statutory costs, it entered a judgment of $82,943.89 in Hear's favor.  Superior now appeals, raising generally the same issues advanced in its postverdict motions.

## DISCUSSION

*I. Superior's Motion to Change the Jury's Answers*

¶12    Superior argues the circuit court was legally required to change the jury's answer to Question 1, which asked whether Superior materially breached the lease.  "A motion to change a jury's special verdict answer challenges the sufficiency of the evidence to sustain the answer." ***Danner v. Auto-Owners Ins.***, 2001 WI 90, ¶72, 245 Wis. 2d 49, 629 N.W.2d 159 (citing WIS. STAT. § 805.14(5)(c) (1997-98)).[4]  A motion challenging the sufficiency of the evidence to support an answer in a verdict will not be granted "unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."  WIS. STAT. § 805.14(1).  The application of this standard presents a question of law, but we

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

give substantial deference to the circuit court's better ability to assess the weight and relevancy of the evidence. ***Weiss v. United Fire & Cas. Co.***, 197 Wis. 2d 365, 388-89, 541 N.W.2d 753 (1995).

¶13    Superior argues there was no credible evidence to support the jury's answer regarding Superior's breach of the lease because the evidence showed Hear was behind on his capital contributions prior to and throughout the pendency of this action.  As a result, Superior contends the circuit court was required to exercise its equitable authority and apply the doctrines of offset or recoupment to conclude, as a matter of law, that Superior did not breach the lease.  In other words, Superior asserts it had the right to apply these doctrines on its own in "real time," as money was owed, such that each time rent was due, Superior could retain that amount and apply it to reduce the amount of Hear's outstanding debt to the company.  As Superior's attorney put it during the hearing on its postverdict motions, the concept is that Superior was "not going to pay [Hear] rent because [Hear] owe[d] the company a bunch of money."

¶14    Although the focus of a motion to change the jury's answer is the sufficiency of the evidence, here Superior attempts to obtain a de novo standard of review by essentially urging this court to conclude that the circuit court was legally *required* to apply equitable doctrines to grant judgment in Superior's favor. We typically review legal issues de novo, but a circuit court's decision to grant equitable relief is discretionary and will not be overturned absent an erroneous exercise of discretion. ***Pietrowski v. Dufrane***, 2001 WI App 175, ¶5, 247 Wis. 2d 232, 634 N.W.2d 109.

¶15    Regardless, even if we view the question as one of law, Superior offers little in the way of authority to support the proposition that the equitable

7

doctrines it invokes—which typically are applied in the context of judicial proceedings, once the offsetting amounts owed have been established—may be applied by a party outside of the judicial realm to avoid breaching a contract. "A set-off is a demand which the defendant has against the plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action. Since it is purely statutory in origin, all the statutory requirements must be complied with." ***Zweck v. D. P. Way Corp.***, 70 Wis. 2d 426, 433, 234 N.W.2d 921 (1975).[5] Recoupment, on the other hand, "is a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction." ***Id.*** at 433-34. Regardless of whether recoupment could even apply in the context of two separate contractual obligations, neither that doctrine nor offset apply in the manner Superior claims here—i.e., to forestall an opposing party's breach-of-contract claim.

¶16 None of the cases Superior cites establish its entitlement to a jury finding in its favor on Hear's breach-of-lease claim. ***Farmer v. Pick Manufacturing Co.***, 227 Wis. 99, 277 N.W. 668 (1938), involved a postjudgment offset against a damages award in the plaintiff's favor in an amount equal to the value of certain of the defendant's business property that had been retained by the plaintiff on a separate contract. ***Id.*** at 100-01, 103. In ***Lincoln Crest Realty, Inc.***

---

[5] There is no substantive difference between set-off and offset, and the terms are used interchangeably. *Offset*, BLACK'S LAW DICTIONARY (11th ed. 2019). In advancing an offset argument, Superior appears to refer to a common law right as opposed to a statutory right. Even the common law right, however, "operates much like a counterclaim." ***State v. Muth***, 2020 WI 65, ¶7 n.3, 392 Wis. 2d 578, 945 N.W.2d 645. A set-off "does not in itself affect the value of the damages being withheld from the injured party but merely results in the mathematical crediting of one independent claim against a competing independent claim after each has been fully established to the satisfaction of the court." ***Klug & Smith Co. v. Sommer***, 83 Wis. 2d 378, 385-86, 265 N.W.2d 269 (1978) (quoting ***Wyandotte Chem. Corp. v. Royal Elec. Mfg. Co.***, 66 Wis. 2d 577, 583-84, 225 N.W.2d 648 (1975)).

***v. Standard Apartment Development***, 61 Wis. 2d 4, 211 N.W.2d 501 (1973), the issue was not whether a breach of contract could be forestalled by a right of offset arising outside of the judicial context but, rather, whether a depository account of a tenant belonged to a bank or to the property owner upon termination of a lease. ***Id.*** at 10. Finally, in ***National Warehouse Corp. v. Banking Commission***, 236 Wis. 105, 294 N.W. 538 (1940), the court concluded that the Banking Commission, which had taken control of an insolvent bank as a receiver under judicial supervision, could equitably offset a depository account to reduce the amount owed by the depositor to the bank. ***Id.*** at 106, 108-09. Contrary to Superior's arguments, none of the cases permit the "unilateral action of one party against the outstanding debts of another" under circumstances similar to this case.

¶17 Other cases Superior cites similarly fail to demonstrate any such "unilateral" right to apply offset. In particular, and consistent with the foregoing, the bankruptcy cases it cites discuss the doctrine of recoupment in terms of an affirmative defense that reduces the amount of the plaintiff's claim. *See **In re Cranberry Growers Coop.***, 588 B.R. 50, 55-56 (Bankr. W.D. Wis. 2018), *aff'd sub nom.* ***Maxwell Foods v. Cranberry Growers Coop.***, No. 2018-CV-538-BBC, 2019 WL 549257 (W.D. Wis. Feb. 12, 2019); ***In re Thompson***, 350 B.R. 842, 852 (Bankr. E.D. Wis. 2006). These cases lend no support to the notion of an extrajudicial "right" not to make a payment when due based upon the offset of an amount claimed due under a separate contract.

¶18 Superior argues the circuit court had no choice but to "accept[] the applicability of the doctrine" and "do the math" to "erase[]" its breach of the lease as found by the jury. This assertion distorts the circuit court's role in the proceedings. Equitable determinations such as recoupment are not necessarily capable of the mechanical application Superior suggests. Again, "[t]he basis of all

9

equitable rules is the principle of discretionary application." ***Richards v. Land Star Grp., Inc.***, 224 Wis. 2d 829, 847, 593 N.W.2d 103 (Ct. App. 1999). Given that the authority Superior cites does not support its request to change the jury's answer regarding breach of the lease, and that Superior offers no other basis to challenge the court's exercise of discretion in denying its request, we conclude Superior has failed to demonstrate the court erred.

¶19 Superior also argues the circuit court should have changed the jury's answer regarding whether Hear breached his obligations under the Preliminary Agreement. Again, this presents a question of the sufficiency of the evidence to support the jury's answer. *See* WIS. STAT. § 805.14(5)(c). Superior, however, argues that because the special verdict asked only whether Hear "breach[ed] the Preliminary Agreement" and did not ask for any specific factual findings, we may determine de novo whether a breach occurred.

¶20 We decline to apply a de novo standard of review to the jury's finding. Superior does not challenge the special verdict form as being inadequate, nor does it in any way challenge the jury instructions regarding the breach of contract claim. Rather, it seeks to relitigate the issue of Hear's alleged breach of the Preliminary Agreement by emphasizing the evidence that would have supported a contrary finding.

¶21 Superior misapprehends the proper role of an appellate court following a trial. "Our task is not to search the record for evidence contrary to the jury's verdict; rather, we must search the record for credible evidence in support of the verdict, accepting any reasonable inferences favorable to the verdict that the jury could have drawn from that evidence." ***Staehler v. Beuthin***, 206 Wis. 2d 610, 617, 557 N.W.2d 487 (Ct. App. 1996). We must affirm the verdict if there is

any credible evidence to support it—and this is even truer when the verdict has the circuit court's approval. *Id.*

¶22 As Hear points out, the Preliminary Agreement did not call for a specific amount of capital contributions, nor did it prohibit the members from withdrawing. Indeed, the Preliminary Agreement referred vaguely to the "necessary expenditures to remodel, decorate, staff, and otherwise prepare the restaurant for opening." The amount of financing was indefinite and was designated to "be a source of ongoing communication and consultation between the parties." It is undisputed that Hear contributed $210,000 to the venture and participated in preparing the restaurant for opening.[6] Under these circumstances, we cannot conclude there was insufficient evidence for the jury to find that Hear satisfied his obligations under the Preliminary Agreement.

¶23 Superior also argues the circuit court erred by refusing to change the jury's answer regarding the February 7, 2017 date for Hear's withdrawal. Superior argues there was no evidence that any of the parties gave any legal effect to the February 7 e-mail. Regardless of how the parties understood that e-mail or responded to it, the contents of the e-mail itself provided a sufficient basis to support the jury's determination regarding the withdrawal date. Again, if there is any credible evidence to support the jury's determination, we must affirm. *Staehler*, 206 Wis. 2d at 617.

## II. Adequacy of Statutory Notice for Eviction

---

[6] Indeed, in asserting that the jury's answer on the special verdict regarding Hear's withdrawal date should be changed, Superior maintains that even after February 7, 2017, Hear "continued to behave as a partner, enjoyed free access to input, meetings, menu development, the restaurant, the books, Articles, and was in every respect involved in decision making thereafter."

¶24 Superior argues the statutory notice identifying the tenant's deficiencies was defective because it did not identify a failure to pay certain utilities as a potential basis for eviction. Without such notice, Superior argues it was error for Hear to rely on the failure to pay utilities at trial, because such a failure could not serve as grounds for eviction, nor would Hear be entitled to corresponding damages.

¶25 We perceive no basis to overturn the jury's determination on Hear's eviction claim based on this alleged insufficiency of the notice. The notice was in the form of a letter from Hear's attorney alerting Superior to the fact that rent in the amount of $33,000 was overdue and there were "other defaults under the lease agreement," including the failure to pay property taxes and the removal of equipment and furnishings. Superior has failed to demonstrate that the type of specificity it advocates is required by the relevant statute to constitute a valid notice of default. *See* WIS. STAT. § 704.17(3)(a) (requiring that the landlord give notice that the tenant must "pay the rent, repair the waste, or otherwise comply with the lease").[7]

III. *The Circuit Court's Evidentiary Determinations*

¶26 The contours of Superior's next argument are somewhat unclear. Ostensibly, Superior challenges the circuit court's decision to admit the contents of a demand letter Torvinen wrote in 2014 to an insurer during his representation of Hear on a personal injury matter. Superior's brief-in-chief argues the court

---

[7] Superior impermissibly cites an unpublished single-judge opinion issued prior to July 1, 2009, in violation of WIS. STAT. RULE 809.23(3). We admonish Superior's counsel that future violations may be punishable under WIS. STAT. RULE 809.83(2).

"should have granted a new trial … with clear instructions to both parties that the letter not be used at all." In its reply brief, however, Superior focuses mostly on whether the court erred by allowing a portion of the letter to be sent to the jury during deliberations—adding that the letter's admission constituted "actionabl[e] defam[ation]" by Hear.

¶27 To the extent we can discern Superior's argument, we conclude the circuit court did not err by admitting the letter or by allowing the letter to be sent to the jury during deliberations. Both are discretionary determinations. *See Weborg v. Jenny*, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191 (regarding admission of evidence); *Shoemaker v. Marc's Big Boy*, 51 Wis. 2d 611, 619, 187 N.W.2d 815 (1971) (regarding what exhibits are permitted in the jury room).

¶28 As to the admissibility of the demand letter, Superior baldly asserts the letter was irrelevant and hearsay. It fails to develop any cogent arguments on these points, and we will not address them. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed."). The demand letter was the subject of a pretrial motion in limine. The circuit court concluded that because the credibility of the various partners was central to the case, it would allow portions of the demand letter into evidence as prior inconsistent statements regarding Torvinen's knowledge of Hear's assets.[8] The court determined, however, that any attempt to relitigate the

---

[8] Superior suggests Torvinen's statement at a deposition in 2018 that he did not know Hear owned rental properties was not, in fact, inconsistent with the contents of the demand letter. Superior explains that Torvinen did not know in 2018 whether Hear still owned the rental properties from 2014, so he answered truthfully as to his knowledge in 2018. The question asked at deposition, however, was whether Torvinen knew Hear owned and managed rental properties "[p]*rior to [Hear] getting involved in Epic*." (Emphasis added.) As a result, his denial at his deposition in 2018 was inconsistent with the demand letter he authored in 2014.

13

earlier personal injury issue by presenting voluminous materials would not be permitted. Because we can perceive a reasonable basis for the court's decision, we will not overturn it. *See Weborg*, 341 Wis. 2d 668, ¶41.

¶29 We also conclude the circuit court did not erroneously exercise its discretion by sending a portion of the letter to the jury. The letter was among the documents the jury requested to see during deliberations. Factors a circuit court should consider when sending an exhibit to the jury room include "consideration of whether the exhibit will aid the jury in proper consideration of the case, whether a party will be unduly prejudiced by submission of the exhibit, and whether the exhibit could be subjected to improper use by the jury." *State v. Jensen*, 147 Wis. 2d 240, 260, 432 N.W.2d 913 (1988). The court addressed these factors here by redacting the letter to ensure the jury focused only on the asserted prior inconsistent statement. The court agreed with Superior's assertion that the matter should not become "a trial within a trial." Moreover, Superior makes no argument regarding prejudice as it pertains to the decision to send a portion of the letter to the jury. We perceive no basis to overturn the court's exercise of discretion in this respect.

¶30 Superior next argues the circuit court "erred when it allowed one sentence to be taken out of context to be published on a TV screen." This argument relates to the February 7, 2017 redacted e-mail from Hear's counsel, which contained the statement that Hear would "remain the restaurant's landlord, but he will not be a business partner in the restaurant any longer." The sentence was apparently shown on visual equipment, and Superior argues this procedure highlighted the sentence's importance to the jury. Superior also appears to take issue with the timing of the presentation, arguing Superior was only permitted to provide context for the e-mail several days later (in the form of other e-mail

communications), and it was not permitted to publish those contextual e-mails in violation of WIS. STAT. § 901.07.

¶31 We agree with Hear's assertion that Superior failed to preserve this argument for appellate review. The "rule of completeness," WIS. STAT. § 901.07, requires that when a party seeks to introduce a part of a writing or statement, the adverse party may "at that time" introduce any other writing or statement "which ought in fairness to be considered contemporaneously with it to provide context or prevent distortion." Although the trial transcript shows that Superior requested an off-the-record sidebar at the time the redacted e-mail was offered, the transcript does not indicate the contents of that sidebar discussion, nor does it contain any other indication that an objection was made. Merely requesting a sidebar on an unspecified topic is insufficient to preserve the issue for appellate review. *See State v. Agnello*, 226 Wis. 2d 164, 172-73, 593 N.W.2d 427 (1999).[9]

*IV. The Circuit Court's Refusal to Award Damages for Hear's Breach of the Implied Covenant of Good Faith and Fair Dealing*

¶32 Lastly, Superior contends the circuit court erred when it refused to award damages on its counterclaim for Hear's breach of the implied covenant of good faith and fair dealing. This implied covenant is of such a nature that it imposes a duty of good-faith dealing and cooperation on all parties to a contract. *See Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶46, 348 Wis. 2d 360, 842 N.W.2d 240. Importantly, what remedy should be ordered for a breach of the

---

[9] In any event, we would reject Superior's argument in this regard on its merits. "The conduct of a trial is largely within the trial court's discretion." *Family Plan. Health Servs., Inc. v. T.G.*, 158 Wis. 2d 100, 111, 461 N.W.2d 794 (Ct. App. 1990). Nothing Superior has presented persuades us that the circuit court erroneously exercised its discretion regarding the sequencing of the evidentiary presentation or the manner in which items were displayed to the jury.

implied covenant of good faith and fair dealing is determined in the exercise of the circuit court's equitable authority. *See Chayka v. Santini*, 47 Wis. 2d 102, 109, 176 N.W.2d 561 (1970) (citing *Allen v. Ross*, 199 Wis. 162, 164, 225 N.W. 831 (1929)).

¶33 Superior identifies the ways in which it believes Hear breached the implied covenant of good faith and fair dealing relating to the Preliminary Agreement. It is unclear, however, on what basis the jury found liability in this regard. As Superior notes, given the jury's answers, it seems clear it found that although Hear had adhered to the letter of the Preliminary Agreement, he had not complied with its spirit. But beyond this inference, the special verdict form did not ask the jury to identify the acts or omissions that constituted the breach.

¶34 Superior argues that it was the circuit court's task, following the jury's verdict, to identify which unexpressed expectations of the parties Hear failed to live up to and then provide a remedy corresponding to the benefits Superior reasonably expected to receive from the Preliminary Agreement. But the court essentially did this, finding that it would have been appropriate to award Superior the amount of any outstanding capital contributions prior to Hear's withdrawal—$97,500. Recognizing that the jury had already awarded Superior $97,500 on its breach of fiduciary duty claim against Hear, the court concluded Superior had failed to demonstrate any additional damages that it suffered.

¶35 Even now, Superior is unclear what additional damages would have been appropriate. To the extent Superior suggests that it is entitled to damages equivalent to the capital contributions Torvinen and Casper made after February 7, 2017, it fails to explain how or why the implied covenant of good faith and fair dealing survived Hear's withdrawal from the venture. Again, we will not consider

16

undeveloped arguments. *Pettit*, 171 Wis. 2d at 646. In all, we perceive no basis on which to conclude the circuit court erroneously exercised its discretion by refusing to award damages on Superior's claim for breach of the implied covenant of good faith and fair dealing.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.